[Civ. No. 29013, 29803. First Dist., Div. One. July 26, 1972.]

DONALD TYRON FRANKLIN, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE SAN FRANCISCO JUDICIAL
DISTRICT OF THE CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Respondents.

(Consolidated Appeals.)

888

**COUNSEL**

Wong, Siedman & Lee, Wong, Siedman & Lowe, Edward H. Steinman and Dennis A. Lee for Plaintiff and Appellant.

Thomas M. O'Connor, City Attorney, Burk E. Delventhal, Deputy City Attorney, and Joseph W. Starritt III for Defendants and Respondents.

**OPINION**

**MOLINARI, P. J.**—In these consolidated appeals plaintiff Donald Tyron Franklin appeals from the order denying his petition for a writ of mandate (1 Civil 29013) and from a judgment of dismissal in an action for claim and delivery, conversion and declaratory relief (1 Civil 29803).

### Statement of the Case

This case involves a revolver which was introduced into evidence at a preliminary hearing in a criminal action in the municipal court.

On June 17, 1970, Franklin filed an action in the superior court naming as defendants the Municipal Court of the City and County of San Francisco (hereinafter referred to as the "Municipal Court") and John A. O'Kane, "an individual" (hereinafter referred to as "Judge O'Kane"). This action purported to state three causes of action. The "first cause of action" sought a writ of mandate compelling the return of a certain revolver allegedly belonging to Franklin. The "second cause of action" sought relief upon a theory of conversion or alternately in claim and delivery. In the "third cause of action" Franklin sought a declaration as to his rights and duties under Penal Code section 1418,[1] dealing with the disposition of evidence in criminal cases, and as to the validity and constitutionality of this statute.

The cause proceeded before Judge Byron Arnold on the "first cause of action," and on August 5, 1970, Judge Arnold issued an order denying the petition for writ of mandate which was entered as a judgment on August 6, 1970. An appeal from said order was filed on August 11, 1970. Upon the filing of the record this appeal was given the number 1 Civil 29013.

The action thereafter proceeded on the "second and third causes of action" before Judge Robert W. Merrill who, on February 11, 1971, granted a motion for summary judgment in favor of defendants dismissing those causes of action. On February 17, 1971, Franklin filed a notice of appeal from this judgment and upon the filing of the record this appeal was given the number 1 Civil 29803.

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

On June 2, 1971, Franklin made an application to consolidate the two appeals for appellate purposes. This court thereupon issued an order to show cause why the appeal in 1 Civil 29013 should not be dismissed as premature under the "One Final Judgment Rule." Upon the hearing of said order to show cause on June 29, 1971, and following a stipulation entered into between the parties that consolidation was acceptable to them, consolidation of the two appeals was ordered. Said order was made on the basis that, although joined in the same complaint, two separate actions had in essence been filed and tried separately in the court below, i.e., a petition for a writ of mandate, on the one hand, and a complaint for conversion, claim and delivery and declaratory relief, on the other.

### Petition for Writ of Mandate

In his petition for writ of mandate Franklin alleges as follows: That on March 16, 1969, he was arrested at his residence and the police seized his .38 caliber "snub nosed" Smith and Wesson revolver. The revolver was in a room in which Franklin was not present at the time of the arrest. Franklin had purchased the revolver four months earlier at Val's Gun Shop, a licensed gunshop dealer in San Francisco, and had registered it with the San Francisco Police Department.

That on April 10, 1969, a preliminary hearing was held in the Municipal Court before Judge O'Kane, sitting as a judge of said court. The criminal charges against Franklin were dismissed and Judge O'Kane issued an order confiscating the revolver pursuant to section 1418.

That the Municipal Court has not and will not give Franklin notice of any hearing at which he might inquire into and contest the taking and detention of the revolver, and in addition, the Municipal Court has not compensated Franklin for the taking of the revolver.

That on July 9, 1969, Franklin, through his attorney, delivered to Judge O'Kane an application for an order returning the revolver; that the Municipal Court, through Judge O'Kane, refused to issue an order for the return of the revolver; that on October 27, 1969, Franklin, through his attorney, contacted Judge O'Kane by telephone seeking the return of the revolver; and that the Municipal Court, through Judge O'Kane, refused to issue an order for the return of the revolver.

Franklin further alleges that the Municipal Court has the ability and the duty to return the revolver lawfully owned by him and refused all requests and demands for the return of said property. He also alleges that the Municipal Court has deprived him of his property without due process of law

by taking the revolver pursuant to section 1418 which does not afford reasonable notice of the time and place of a hearing, an opportunity to be heard, nor just compensation for the property taken and held. He therefore alleges that section 1418 is unconstitutional and that the orders confiscating the revolver and subsequently refusing to return it are void. Finally, Franklin alleges that he has no plain, speedy and adequate remedy at law.[2]

On June 17, 1970, an alternative writ of mandate was issued by the superior court. The Municipal Court and Judge O'Kane filed their answer and return to the petition on July 13, 1970. All of the allegations of the petition are denied except those expressly admitted, as follows: That Franklin had been arrested at his residence on March 16, 1969; that at a preliminary hearing arising out of the March 16, 1969 arrest all criminal charges against Franklin were dismissed; that a Smith and Wesson snubnosed .38-caliber weapon was introduced into evidence at the preliminary hearing and that an order was issued confiscating said weapon; that the Municipal Court, through Judge O'Kane, refused to issue an order for the return of said weapon; and "that telephone conversations have been held between the Court and various attorneys allegedly representing petitioner; . . ."

The answer and return affirmatively allege that Franklin had been booked on suspicion of violating section 217; that the testimony of Janice Burns was given at said preliminary hearing; and that the pistol in question is no longer under the jurisdiction of the Municipal Court.

By way of an affirmative defense, the Municipal Court and Judge O'Kane allege that Franklin has failed to state a cause of action; that he has failed to make a showing in either his petition or his affidavits that the ownership of the revolver had been proved at the time of the original request for its return or at any time subsequent; that Franklin is guilty of laches; that Franklin comes before the court with unclean hands; and that he has an adequate remedy at law.

As a further, separate and distinct defense, the Municipal Court and Judge O'Kane allege that at all times mentioned in the petition sections 1417 through 1419 were in full force and effect; that on March 16, 1969, Janice Burns was found shot in the chest at 77 Langton Street; that upon entering the residence two members of the San Francisco Police Depart-

---

[2]Franklin also alleged that, subsequent to his arrest, the police removed a holster and a bedspread from his apartment. However, it was stipulated by the parties that Franklin later received these two items from the police department and that all references to them in the petition should be deleted.

ment observed Franklin leaning over Janice Burns; that the policemen inquired as to the circumstances of the shooting and Franklin told them Miss Burns had shot herself; that during this conversation Franklin handed to the policemen the revolver which is the subject of the instant petition; that Franklin was arrested and booked for violation of section 217; that a check by the San Francisco Police Department failed to show that the revolver was registered with said department; that on April 10, 1969, a preliminary hearing was held in the Municipal Court before Judge O'Kane; that at this hearing Janice Burns testified that she was shot while she and Franklin were playing "Russian Roulette"; that the revolver was discharged while it was pointed at her; that Franklin told her to tell the police she had shot herself; that when the police arrived she told them she had shot herself; that at said preliminary hearing the subject revolver was offered as an exhibit; that at the conclusion of the testimony the court ordered the charge dismissed but issued an order confiscating the revolver; and that no objection was made by counsel for Franklin at that time.

The minutes of the court attached as an exhibit to defendants' answer contain the following notation: "People's Exh. No. 1 Gun ordered confiscated. People's Exhibit No. 1 withdrawn in open court."

Franklin did not file any responsive pleading to the return of the Municipal Court and Judge O'Kane. The matter having been submitted on the pleadings, the superior court made its order denying the petition for writ of mandate.

■ "Under section 1091 [of the Code of Civil Procedure] a petitioner may file a replication denying the affirmative averments of the answer, or he may controvert them by proof presented by him at the hearing. [Citations.] Such affirmative allegations are accepted as true unless they are controverted by such pleading or proof. [Citations.] Accordingly, if such affirmative averments of the answer are not so controverted and the case is submitted on the petition and answer alone, the uncontroverted allegations of the answer must be taken as true. [Citations.]" (*Lotus Car Ltd.* v. *Municipal Court,* 263 Cal.App.2d 264, 268 [69 Cal.Rptr. 384]; *California Portland Cement Co.* v. *State Bd. of Equalization,* 67 Cal.2d 578, 582, fn. 5 [63 Cal.Rptr. 5, 432 P.2d 700].)

Applying these principles to the case before us we find that the essential affirmative allegations of the answer that are uncontroverted and therefore must be taken as true, are as follows: That Franklin was arrested at his residence for violation of section 217 and a revolver was taken from him at that time; the revolver was used as an exhibit at the preliminary examination; that at the conclusion of the hearing the complaint was ordered dis-

missed and Franklin was ordered discharged; that the revolver was ordered confiscated; that Judge O'Kane refused to return the revolver when a demand for its return was made by Franklin; and that the revolver was no longer in the jurisdiction of the Municipal Court.

The determination of the issues tendered by the petition and the answer revolve around the interpretation of sections 1418 and 1419. At the times pertinent to this proceeding section 1418, in relevant part, provided as follows: "The court may, on application of the party entitled thereto, or an agent designated in writing by the owner, order all such exhibits, other than documentary exhibits, as may be released from the custody of the court without prejudice to the state, delivered to such party at any time after the final determination of the action or proceedings; . . . If the party entitled to such exhibits is unknown, or fails to apply for the return of such exhibits, the procedure for their disposition shall be as follows: [¶] After the expiration of one year from the time the conviction becomes final, or if the action or proceeding has not resulted in a conviction, at any time after the judgment has become final, the court in which the case was tried shall make an order specifying what exhibits may be released from the custody of the court without prejudice to the state. Upon receipt of such an order, the clerk of the court shall transfer the property to the county purchasing and stores agency or other proper county agency for sale to the public. [¶] At any time prior to the time fixed for the transfer, the owner or any person entitled to the possession of any of such exhibits may obtain from the court an order returning them to him. . . ."

Section 1419 provides as follows: "The provisions of Section 1418 shall not apply to any dangerous or deadly weapons, narcotic or poison drugs, explosives, or any property of any kind or character whatsoever the possession of which is prohibited by law, used by a defendant in the commission of the crime of which he was convicted, or with which he was armed or which he had upon his person at the time of his arrest. [¶] Any such property filed as an exhibit shall be, by order of the trial court, destroyed or sold or otherwise disposed of under the conditions provided in such order."

Section 1418 has been commented upon in two cases, *Wenzler* v. *Municipal Court,* 235 Cal.App.2d 128 [45 Cal.Rptr. 54], and *People* v. *Tuttle,* 242 Cal.App.2d 883 [52 Cal.Rptr. 204]. In each the comment was unnecessary to the disposition of the case before the court.[3]

In *Wenzler* the appellate court commented that "The municipal court has no duty to make an order releasing exhibits to petitioner unless (1) the

[3]A petition for a hearing was denied by the Supreme Court in *Wenzler.* No petition for a hearing by the Supreme Court was filed in *Tuttle.*

exhibits are still in the custody of the court and (2) petitioner is the owner or otherwise entitled to possession of the exhibits." (*Wenzler* v. *Municipal Court, supra,* 235 Cal.App.2d 128, 131.) Implicit in this statement is the conclusion that if the court has jurisdiction over the exhibits and the person seeking their return is entitled to possession the court has no discretion to refuse to turn over the exhibits.[4]

In *Tuttle* the appellate court stated that the first paragraph of section 1418 "is permissive in nature rather than mandatory; authorizes the court, in its discretion, to release exhibits; and does not confer upon the party entitled thereto a right to obtain their release. . . . Considered as a whole, the statute is merely a housekeeping measure authorizing the court to dispose of exhibits in its custody." (*People* v. *Tuttle, supra,* 242 Cal.App.2d 883, 884.)[5] The court commented that if the first paragraph of section 1418 "is interpreted as conferring a right upon the party claiming to be entitled to exhibits, rather than as furnishing a procedure to clear the court's files, it would be subject to the meritorious claim of unconstitutionality" that had invalidated sections 1408 and 1409 providing for the return of stolen or embezzled property. (At p. 885.) Those sections had been declared unconstitutional as violative of due process because they contained no provision for giving notice of proceedings thereunder to interested parties or permitting them to be heard. (See *Modern Loan Co.* v. *Police Court,* 12 Cal.App. 582, 585-586 [108 P. 56]; *People* v. *Lawrence,* 140 Cal. App.2d 133, 136 [295 P.2d 4].)[6]

---

[4]In *Wenzler* the petitioner sought the return of exhibits used as evidence in his trial. The appellate court upheld the denial of the writ of mandate to compel the return of the exhibits on the ground that the petitioner had failed to allege that the exhibits remained in the custody of the court at the time he had made his original request for the order releasing them. The reviewing court also noted that although the petitioner alleged that he owned the exhibits, he did not allege that his ownership had been proven at the time he made his original request. (235 Cal.App.2d at p. 131.)

[5]In *Tuttle* the defendant sought to attack the order of the superior court refusing the return of exhibits upon an appeal from his conviction. The reviewing court held that the order was not appealable. (242 Cal.App.2d at p. 885.)

[6]At the time *Modern Loan, Lawrence* and *Tuttle* were decided, sections 1408 and 1409 provided as follows: "On satisfactory proof of the ownership of the property the magistrate before whom the complaint is laid, or who examines the charge against the person accused of stealing or embezzling it, must order it to be delivered to the owner, on his paying the necessary expenses incurred in its preservation, to be certified by the magistrate. The order entitles the owner to demand and receive the property." (§ 1408.)

"If property stolen or embezzled comes into custody of the magistrate, it must be delivered to the owner on satisfactory proof of his title, and on his paying the necessary expenses incurred in its preservation, to be certified by the magistrate." (§ 1409.)

Sections 1408 and 1409 were amended in 1971 to provide that reasonable notice and opportunity to be heard be given to the person from whom custody of the property was taken and any other person as required by the magistrate.

*Tuttle's* conclusion that the first part of section 1418 is unconstitutional if it is read as imposing a mandatory duty to release the exhibits to the party entitled thereto is based upon the rationale of *Modern Loan* and *Lawrence*. In our opinion, neither of these cases require the conclusion that section 1418 is unconstitutional.

In *Modern Loan* one Bessie Seaman submitted to a judge of the police court an affidavit alleging that E. R. Burke had unlawfully taken her diamond breast pin and that there was reasonable and probable cause to believe that it was concealed at the place of business of Modern Loan. Upon the basis of this affidavit the judge issued a search warrant pursuant to which the breast pin was taken from the possession of Modern Loan.[7] The police judge was about to proceed and determine the ownership of said pin, pursuant to section 1536,[8] when Modern Loan, claiming possession as a lien holder, sought a writ of prohibition in the superior court. That court held that the police judge was without jurisdiction because the provisions of the Penal Code which authorized the police judge to hear and determine "the ownership of" and "title to" personal property were unconstitutional. The appellate court, in affirming the judgment, held that "these two sections [1408 and 1409], so far as they are applicable to search-warrant proceedings, are void. One who is in possession of property under a claim of right cannot be deprived of its possession without due process of law; and in order to constitute due process of law, there must be notice of the time and place of hearing and an opportunity to be heard." (12 Cal.App. at p. 585.)

In *Lawrence,* the defendant had been charged with two counts of second degree burglary: (1) taking watches from a certain jewelry store and (2) taking approximately $200 from the Mission Inn. Lawrence was convicted of the first charge and acquitted of the second. At his trial, $114.21, which he had had on his person at the time of his arrest, had been introduced into evidence. After the trial he made a written request to the county clerk for the return of the money. Subsequently, Fireman's Fund Indemnity Company, the subrogee of Mission Inn, filed a claim in the criminal proceeding for the return of the stolen property. Fireman's Fund alleged that $198.40 had been stolen from the Mission Inn and that this sum had been seized by

---

[7]The search warrant was issued pursuant to section 1524, subdivision (1), which then provided that a search warrant could issue when property was stolen or embezzled, in which case it could be taken from the possession of the person by whom it was stolen or embezzled "or from any person in whose possession it may be."

[8]At that time section 1536 provided that "When the property is delivered to the magistrate, he must, if it was stolen or embezzled, dispose of it as provided in Sections 1408 and 1413, inclusive."

the police at the time of Lawrence's arrest and had been delivered into the custody of the court. Fireman's Fund contended that sections 1409 and 1410 gave it the right to file the claim.[9] The trial court set a date for the hearing of the claim causing notice to be sent to the defendant who was then incarcerated in the state prison. The defendant did not appear although he did send a letter to the court clerk contesting the hearing as illegal. A judgment was rendered in favor of Fireman's Fund for delivery to it of the sum of $198.40. (140 Cal.App.2d at pp. 134-135.)

In reviewing the judgment the reviewing court followed the rationale of *Modern Loan* and held that sections 1408 and 1410 were void "as applicable to the facts of this case, . . ." (140 Cal.App.2d at p. 138.) The court observed that "Presumptively the money taken from defendant belonged to him" (at p. 138), and that since the defendant was in actual possession of the property when it was taken from him, he was entitled under due process concepts to reasonable notice and opportunity to be heard before the property could be taken from him pursuant to a statute specifically providing such notice and hearing. (At p. 137.)

 In the instant case we observe, initially, that we are not concerned with stolen or embezzled property, the ownership of which may be subject to conflicting claims, but to an exhibit introduced in a criminal action. The nature of the exhibit, the circumstances under which it became relevant evidence, and the manner of its introduction are matters known to the trial court. Accordingly, in most instances the trial court is aware of the person or party who was in actual possession or ownership of the exhibit, or at least the person or party to whom the exhibit presumptively belongs. Certainly, insofar as the facts of the present case are concerned, Franklin had previously been in possession of the revolver and it presumptively belonged to him. He alone claimed the revolver. The court was not called upon to determine adverse claims to the revolver but to return it to its presumptive owner. There was no other party to whom the court could have given notice. In this situation there is no violation of due process to construe section 1418 as imposing a mandatory duty to return an exhibit to the party entitled thereto.

We apprehend that the Legislature intended to enact a statute whereby exhibits introduced into evidence in a criminal trial could be returned to the party entitled thereto in an expedient and efficacious manner. *Tuttle* recognizes that "Where reasonable, an interpretation of a statute support-

---

[9]Section 1409, as it then read, is set out in footnote 6, *supra*. Section 1410 then provided as follows: "If the property stolen or embezzled has not been delivered to the owner, the court before which a trial is had for stealing or embezzling it may, on proof of his title, order it to be restored to the owner."

ing its constitutionality will be accepted over that invalidating it as unconstitutional." (242 Cal.App.2d at p. 885; see Civ. Code, § 3541; *County of Los Angeles* v. *Legg,* 5 Cal.2d 349, 353 [55 P.2d 206].) ▮ "We must . . . presume that the Legislature intended to enact a valid statute; we must, in applying the provision, adopt an interpretation that, consistent with the statutory language and purpose, eliminates doubts as to the provision's constitutionality. [Citations.]" (*In re Kay,* 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142]; *Erlich* v. *Municipal Court,* 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334].)

▮ " 'It is an established principle of statutory construction that when two alternative interpretations are presented, one of which would be unconstitutional and the other constitutional, the court will choose that construction which will uphold the validity of the statute and will be constitutional.' [Citations.]" (*Baldwin* v. *City of San Diego,* 195 Cal.App.2d 236, 240 [15 Cal.Rptr. 576]; *Patterson* v. *Municipal Court,* 232 Cal.App.2d 289, 294 [42 Cal.Rptr. 769]; Civ. Code, § 3541.) ▮ In the light of this rule the question whether the challenged portion of section 1418 is intended to impose a mandatory duty or only to grant direction is not to be determined solely by the fact that it provides that the court "may" issue the order. (See *Carter* v. *Seaboard Finance Co.,* 33 Cal.2d 564, 573 [203 P.2d 758].) ▮ "It is a fundamental rule of statutory construction that a provision under consideration by the courts should, wherever possible, be given such construction as will reasonably achieve its object and purpose within the context of the legislative scheme." (*Hochfelder* v. *County of Los Angeles,* 126 Cal.App.2d 370, 373-374 [272 P.2d 844].) ▮ "If to construe it as directory would render it ineffective and meaningless it should not receive that construction." (*Carter* v. *Seaboard Finance Co., supra,* at p. 573.) ▮ Moreover, " '[w]here the purpose of the law is to clothe public officers with power to be exercised for the benefit of third persons, or for the public at large—that is, where the public interest or private right requires that a thing be done—then the language, though permissive in form, is peremptory.' [Citation.]" (*Harless* v. *Carter,* 42 Cal.2d 352, 357 [267 P.2d 4]; *River Farms Co.* v. *Gibson,* 4 Cal.App.2d 731, 750 [42 P.2d 95].)

▮ If we were to construe the challenged portion of section 1418 as being permissive so as to empower a court in its discretion to withhold property under its jurisdiction from the party entitled thereto, the section would be open to serious constitutional doubt. The right to regain possession of one's property is a substantial right which may not be dependent upon the whim and caprice of a court. (Cf. *Mendoza* v. *Small Claims Court,* 49 Cal.2d 668 [321 P.2d 9]; *Mihans* v. *Municipal Court,* 7 Cal. App.3d 479 [87 Cal.Rptr. 17].) We apprehend that an interpretation of

section 1418 as being permissive does far more violence to the concepts of due process than does the interpretation that it is mandatory.

We perceive that section 1418 contemplates that the party who is entitled to an exhibit will come forward and claim it. As pointed out above, the court in most instances will have been apprised of the identity of the person who is entitled to the exhibit in its custody and, accordingly, the person to whom it presumptively belongs. To require that a collateral hearing be held on notice for the purpose of returning an exhibit in the case to the person entitled thereto would be cumbersome, costly and time-consuming. Where the trial court is in doubt as to whether the person claiming the exhibit is entitled to it, or if there are conflicting claims to the exhibit, the court may refuse to return the exhibit. Upon such refusal the party claiming the exhibit has available to him review by writ of mandate to determine whether the court was justified in refusing to return the exhibit to him. (See *People* v. *Gershenhorn,* 225 Cal.App.2d 122, 126 [37 Cal. Rptr. 176]; *Gershenhorn* v. *Superior Court,* 227 Cal.App.2d 361, 364, 367, fn. 1 [38 Cal.Rptr. 576].) In the alternative he may institute a civil action for recovery of his property by a civil action in conversion. (*People* v. *Gershenhorn, supra,* at p. 126.) We perceive, moreover, that in a proper case parties having conflicting claims to an exhibit may be required to interplead their claims (Code Civ. Proc., § 386) and that leave may be granted to intervene in a proceeding litigating the right to an exhibit. (Code Civ. Proc., § 387.)

In the present case section 1418 provided a simple and expedient procedure whereby Franklin could obtain the return of the revolver which had been taken from him. He had a right to regain possession of this revolver since, although it was a weapon, it was not used by him in the commission of any crime for which he was convicted or with which he was armed or which he had upon his person at the time of his arrest. (§ 1419.) It follows from the rules of construction set forth above that the Municipal Court was obligated to grant the order releasing the revolver if it was within its jurisdiction.

 The denial of the petition for a writ of mandate was not improper in the instant case, however, because it was not established that either the Municipal Court or Judge O'Kane, acting in his official capacity as a municipal judge, had possession of the revolver either at the time the request for its return was made or at the time the petition was determined. (See *Wenzler* v. *Municipal Court, supra,* 235 Cal.App.2d 128, 131.)

A writ of mandate "may be issued by any court, . . . to any inferior tribunal, . . . to compel the performance of an act which the law specially

enjoins, as a duty resulting from an office, trust, or station; . . ." (Code Civ. Proc., § 1085.)· ■ "Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner for the performance of that duty [citations]." (*People* ex rel. *Younger* v. *County of El Dorado,* 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193].)

■ In the instant case neither the Municipal Court nor Judge O'Kane had any authority to confiscate the revolver under sections 1418 and 1419; rather, they were obligated to return the revolver to Franklin upon his demand. However, whether it was proper or not to permit the revolver to leave its jurisdiction, the fact remains that the revolver was not in the custody of the Municipal Court or within its jurisdiction when demand for its return was made or at the time the answer or return was filed. The answer and return affirmatively alleged this circumstance. Franklin did not controvert the allegation and we are, therefore, obliged to accept it as true. ■ "Mandate may not issue to compel action which is not within the court's jurisdiction." (*Daniels* v. *Superior Court,* 132 Cal.App.2d 700, 701 [282 P.2d 1000].) ■ It follows, therefore, that it was proper to have denied the petition since neither the Municipal Court nor Judge O'Kane, as a judge of said court, had the power to issue an order releasing the revolver.

### Claim and Delivery and Conversion

In his "second cause of action" Franklin seeks relief upon the theory of conversion, and, alternately, for claim and delivery. He incorporates the allegations of the "first cause of action" and alleges that the conduct complained of on the part of Judge O'Kane was in his individual capacity and not in his official capacity as a judge of the Municipal Court.

The essential allegations of this "cause of action" are as follows: That Franklin is and has been the owner of the subject revolver since March 16, 1969, on which day the police entered his residence and without his consent removed the revolver; that since the taking of the revolver and up until March 5, 1970, Franklin believed that the revolver was in the possession of the Municipal Court pursuant to its orders confiscating the property and refusing subsequently to return it; that on March 9, 1970, Franklin was informed by the police department that the revolver had been released from the "Property Room" of said department on April 11, 1969, pursuant to the order of the Municipal Court, to Judge O'Kane in his individual capacity, signed by Judge O'Kane in his official capacity; that Frank-

lin therefore believes that the revolver is in the possession of Judge O'Kane, in his individual capacity; that Frankin made a demand of Judge O'Kane for the revolver but Judge O'Kane refused and continues to refuse to deliver the revolver; that the revolver has a value of $100; and that because of Judge O'Kane's unlawful possession of the revolver Franklin has been damaged in the sum of $1,500 because he was unable to obtain a job as a special policeman for a private security agency until November 24, 1969, when he was able to borrow a revolver, but he will not be able to retain this job unless he has his own revolver. Franklin prays for the recovery of the possession of the revolver or for its value, and for damages.

The Municipal Court and Judge O'Kane filed an answer to the "second cause of action" admitting that the police entered Franklin's residence and that Judge O'Kane signed the order of April 11, 1969, releasing the revolver from the custody of the police department and denying all of the other allegations. In particular the answer denied that Judge O'Kane could be sued in his individual capacity, that he had the revolver in his possession, and that he did or continued to have it in his possession.[10]

On November 13, 1970, the Municipal Court and Judge O'Kane filed a motion for summary judgment "dismissing the cause of action for claim and delivery and conversion . . . ." The notice of motion recites that the motion "will be based upon this notice, the pleadings, records and files of this case both here and on appeal." The motion was supported by a memorandum. In said memorandum it was argued that Franklin had not stated a cause of action for conversion or for claim and delivery because Judge O'Kane was protected by judicial immunity. It was also argued that no cause of action for damages was stated because Franklin had not filed a claim with the City and County of San Francisco as required by Government Code sections 911.2 and 915. The only affidavit filed in support of the motion is that of the Controller of the City and County of San Francisco to the effect that Franklin had not filed a claim against said city and county during 1969 or 1970. Franklin did not file any counteraffidavits or declarations but only a memorandum of points and authorities.

Under the state of the record it is apparent that no factual issues were tendered by the affidavits. The affidavit by the controller is merely supportive of the city's contention that Franklin has failed to state a cause of action. Accordingly, we do not restate the basic principles controlling judicial action in granting or denying a summary judgment because we are not

---

[10]It is unclear whether this answer was filed by Judge O'Kane solely in his official capacity or in his individual capacity as well. In view of the uncertainty we shall treat it as having been filed in both capacities.

concerned with the sufficiency of affidavits but with the sufficiency of the "second cause of action" to state a cause of action. That question may appropriately be determined on a motion for summary judgment. (*Goldstein* v. *Hoffman,* 213 Cal.App.2d 803, 811 [29 Cal.Rptr. 334]; *Wilson* v. *Wilson,* 54 Cal.2d 264, 269 [5 Cal.Rptr. 317, 352 P.2d 725].) We are persuaded, moreover, that the motion herein presented and submitted to the court, notwithstanding its nomenclature, was nothing more than a motion for judgment on the pleadings. (See *Maxon* v. *Security Ins. Co.,* 214 Cal.App.2d 603, 610 [29 Cal.Rptr. 586].) Accordingly, the motion has the purpose and effect of a general demurrer. (*Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.,* 67 Cal.2d 408, 411-414 [62 Cal. Rptr. 401, 432 P.2d 3].) ■■■ When a motion is made for a judgment on the pleadings, "the only question, as on general demurrer, is one of law, and that question is simply whether the complaint states a cause of action. [Citations.]" (*Maxon* v. *Security Ins. Co., supra,* at p. 610.)

■■■ Franklin concedes that consideration of his complaint on the theory of claim and delivery has now been foreclosed by the recent Supreme Court decision in *Blair* v. *Pitchess,* 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242], which declared the code provisions pertaining to claim and delivery to be constitutionally deficient. (At pp. 285-286.) We will therefore limit our discussion to Franklin's claim for relief on the theory of conversion.

It thus follows that, in considering the propriety of the judgment dismissing the "second cause of action," we must accept as true all of the allegations in Franklin's complaint. (*Maxon* v. *Security Ins. Co., supra,* 214 Cal.App.2d 603, 610; *Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks., supra,* 67 Cal.2d 408, 412.) An initial difficulty is posed by the fact that Franklin incorporated all of the allegations of his "first cause of action" in his "second cause of action" for conversion.

In his "first cause of action" Franklin alleges that the Municipal Court "has the ability and duty to return property lawfully owned by plaintiff, . . ." In his "second cause of action" Franklin alleges on information and belief that "his property is in the possession of defendant John A. O'Kane, in his individual capacity, . . ."

In resolving this possible inconsistency we are aided by the unique procedural gymnastics which have been performed by the parties in this action. The judgment denying Franklin's petition for a writ of mandate was entered on August 6, 1970. The purported motion for "summary judgment" directed to the "second cause of action" was not filed until Novem-

ber 13, 1970, and judgment thereon was not entered until February 16, 1971. It might thus be found that the provision in the "second cause of action" incorporating the allegations of the "first cause of action" was rendered a nullity by the prior judgment as to the "first cause of action."

We apprehend, in any event, that even if the allegation made by Franklin in the "first cause of action" must be considered as true in a review of the "second cause of action," the "second cause of action" is not necessarily uncertain. In the "first cause of action" Franklin does not allege that the Municipal Court has possession of the gun, but only that it has the "ability and duty" to return it. Moreover, in the "second cause of action" Franklin states that up until March 5, 1970, he was informed and believed "that the gun was in the possession of the Municipal Court." However, Franklin further alleges that he was informed on March 9, 1970, that the gun was released to Judge O'Kane in his individual capacity. Franklin then alleges on information and belief that the gun is in the possession of Judge O'Kane in his individual capacity. Thus, if the allegations of the "first [and] second causes of action" are read as a whole in their entirety the possible inconsistency noted above is resolved. Even if it might be found that there was ground for sustaining a special demurrer for uncertainty, it could not be concluded that there was reason to sustain a general demurrer.

We therefore conclude that the relevant facts are as follows: Franklin has at all times been the owner of the revolver and is entitled to its possession. On April 11, 1969, the Municipal Court, through Judge O'Kane, issued an order releasing the gun to Judge O'Kane in his individual capacity. Franklin has asked Judge O'Kane to return the revolver and Judge O'Kane has refused to do so. Our inquiry, therefore, is whether the complaint states a cause of action for conversion against Judge O'Kane as an individual.

At the outset, we deem it expedient to dispose of the argument raised below and on appeal that the complaint is fatally defective in that it is barred by the doctrine of judicial immunity and by Franklin's failure to file a claim with the City and County of San Francisco as provided in the Government Code. This argument is simply not in point. The "second cause of action" is not directed against Judge O'Kane in his judicial capacity nor is it directed against the City and County of San Francisco. The claim is directed against Judge O'Kane as a private citizen.

In order to state a cause of action for conversion, the plaintiff must allege first, his ownership or right to possession of tangible property at the time of the conversion; second, the defendant's conversion of the property; and third, damages. (3 Witkin, Cal. Procedure (2d ed. 1971) § 565, pp. 2203-2204; *Lowe* v. *Ozmun,* 137 Cal. 257, 260 [70 P. 87].)

■ In the instant case Franklin alleged that he was, on March 16, 1969, and still is, the lawful owner and entitled to the possession of the subject revolver. This is a sufficient allegation of ownership and right to possession. (*Lowe* v. *Ozmun, supra,* 137 Cal. 257, 260-261.) He also alleges facts sufficing to allege a conversion on the part of Judge O'Kane.

■ A general allegation that the defendant "converted the property to his own use" suffices to allege conversion. (See *Lowe* v. *Ozmun, supra,* at p. 260.) An allegation that the plaintiff demanded return of the property and that the defendant refused to return said property has been deemed sufficient notwithstanding the additional conclusionary statement that the defendant acted unlawfully. (*Faulkner* v. *First National Bank,* 130 Cal. 258, 267 [62 P. 463].) Under recent authority "a complaint charging defendant with exercising dominion over property inconsistent with the ownership of plaintiff sets forth a good cause of action for conversion where no special demurrer for uncertainty is interposed. [Citations.]" (*Haigler* v. *Donnelly,* 18 Cal.2d 674, 681 [117 P.2d 331].)

■ In the present case Franklin alleges on information and belief that Judge O'Kane was in possession of the revolver in his individual capacity, and alleges directly that he demanded the revolver from Judge O'Kane, that Judge O'Kane refused to deliver said revolver to Franklin, and that Judge O'Kane detains said revolver without Franklin's consent. Under the decisions this is a sufficient allegation of conversion.

We here observe that pursuant to sections 1418 and 1419 a judge is not entitled to keep or retain an exhibit or to exercise any dominion over it other than in his official capacity as a judge and representative of the court over which he presides. In his official capacity he is obligated to return the exhibit to the person entitled thereto unless it is unlawful property as described in section 1419, in which case he may order it "destroyed, or sold or otherwise disposed of under the conditions provided in such order." (See § 1419; and see § 12028 providing for disposition of unlawfully concealed or possessed weapons.) Under no circumstances is he entitled to appropriate the exhibit for his own use.

Franklin also makes a sufficient allegation of damages. He alleges that the revolver is valued at $100. This is the customary way of pleading damages in conversion actions. (See *Herrlich* v. *McDonald,* 80 Cal. 460 [22 P. 298]; 3 Witkin, Cal. Procedure (2d ed. 1971) § 568, p. 2206.) He also alleges special damages resulting from his loss of possession of the revolver.

Since Franklin sufficiently alleges a cause of action for conversion, it was error for the court below to have dismissed the "second cause of action" as to Judge O'Kane, who is alleged to have acted in his individual capacity.

### Declaratory Relief

■ In his "third cause of action" Franklin seeks a determination of the rights and duties of the parties under section 1418. He again incorporates the allegations set forth in his two prior "causes of action." The analysis which is set forth above respecting the incorporation of the allegations of the "first cause of action" into the "second cause of action" is applicable here.

In conjunction with their motion for a summary judgment as to the "second cause of action" the Municipal Court and Judge O'Kane also filed a motion for summary judgment as to the "third cause of action" seeking declaratory relief. A review of the record discloses that this motion was likewise in effect a motion for a judgment on the pleadings. Accordingly, we must treat its allegations as true. It follows that in reviewing the propriety of the judgment denying declaratory relief we will accept as valid the averment that on April 11, 1969 an order was issued releasing the revolver to Judge O'Kane in his individual capacity.

As we have already noted, a motion for judgment on the pleadings performs the same function as a general demurrer. (*Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks., supra,* 67 Cal.2d 408, 411-412.) Accordingly, our review is limited to determining whether or not a cause of action is stated. (*Maxon* v. *Security Ins. Co., supra,* 214 Cal.App.2d 603, 610.)

Franklin seeks a declaration that section 1418 denies him his rights to due process of law. The issue thereby raised is identical to the issue raised by Franklin in his petition for a writ of mandate. We reviewed this issue above and determined that section 1418 is not unconstitutional as applied to Franklin. As the allegations made by Franklin in his "third cause of action" do not introduce any elements requiring a contrary conclusion, the court below properly denied this aspect of Franklin's "cause of action" for declaratory relief.

In our previous discussion of the import of section 1418 we concluded that it imposed a mandatory duty on a court to issue an order releasing an exhibit within its jurisdiction when a request is made by the party entitled to the exhibit. In the present case the Municipal Court concededly no longer has the revolver within its jurisdiction since it is affirmatively alleged by Franklin and undenied by the Municipal Court and Judge O'Kane that the revolver has been released to Judge O'Kane in his individual capacity. Accordingly, the Municipal Court no longer has jurisdiction to order its release. The court below thus properly determined that it could not

make a declaration as to the rights and duties of the Municipal Court and Franklin under section 1418.

Section 1418 does not impose any duty on Judge O'Kane acting in his individual capacity. Accordingly, Franklin is not entitled to a declaration of his rights under that section against Judge O'Kane acting as a private citizen.

## Conclusion

After meandering through a procedural maze produced by pleadings which are not models, we reach the following conclusion: The order denying the petition for writ of mandate was proper and the only cause of action stated by Franklin is one for conversion against Judge O'Kane in his individual capacity.

The judgment in 1 Civil 29013 denying Franklin's petition for a writ of mandate is affirmed. That portion of the judgment in 1 Civil 29803 in favor of the Municipal Court and Judge O'Kane in his official capacity as a municipal judge is affirmed. That portion of the judgment in 1 Civil 29803 based on the order dismissing the "third cause of action" against Judge O'Kane as an individual is affirmed. That portion of the judgment in 1 Civil 29803 based on the order dismissing the "second cause of action" against Judge O'Kane as an individual is reversed. Each of the parties shall bear his own costs on appeal.

Sims, J., and Elkington, J., concurred.