[No. A039899. First Dist., Div. Four. Apr. 18, 1988.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
PATRICIA CLEMENTS et al., Real Parties in Interest.

**COUNSEL**

Arlo Smith, District Attorney, Hugh A. Donohoe, Assistant District Attorney, John K. Van de Kamp, Attorney General, and Gary W. Schons, Deputy Attorney General, for Petitioner.

No appearance for Respondent.

Martin D. Lurie, V. Roy Lefcourt, Michael J. Gaines, Ellen Chaitan, Tammy Edmonson and Maureen R. Kallins for Real Parties in Interest.

Ephraim Margolin and Bradford L. Battson as Amici Curiae on behalf of Real Parties in Interest.

OPINION

ANDERSON, P. J.—In this petition for writ of mandate, the People challenge respondent court's release of assets subject to forfeiture pursuant to Health and Safety Code section 11470 et seq. to enable defendants to secure private counsel.[1] We consider the People's challenge despite a contention that it is untimely. We conclude that the California statutory scheme authorizes forfeiture of even that property necessary for the retention of private counsel, and we hold that such retention is not prohibited by the constitutional right to counsel.

Section 11470 as amended in 1986 (Stats. 1986, ch. 1044, § 25.5) provides that "all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished" in illegal drug transactions are subject to forfeiture "if the exchange, violation, or other conduct which is the basis for the forfeiture occurred within five years of the seizure of the property." (Subd. (f).) The section further provides that "all right, title, and interest in any personal property described in this section shall vest in the state upon commission of the act giving rise to forfeiture under this chapter." (Subd. (h).) Property subject to seizure may be seized, as in the cases now before this court, incidentally to an arrest for a designated narcotics offense or pursuant to the execution of a search warrant. (§ 11471.) Section 11488.4 as amended in 1986 (Stats. 1986, ch. 1032, § 8) provides that, if there is an underlying or related criminal action, a defendant may move for return of the property on the grounds that there is not probable cause to believe that the property is forfeitable. (Subd. (h).) The ultimate right to forfeiture will ordinarily await the completion of the criminal trial. (§§ 11488.4, subd. (i); 11488.5, subd. (e).)

In four cases in San Francisco Municipal Court defendants charged with narcotics offenses filed nonstatutory[2] motions in municipal court prior to their preliminary hearings for return of moneys which had been seized and held by the police department pending forfeiture proceedings. The motions were made solely on the ground that refusal to release moneys needed to retain private counsel in the underlying criminal proceedings is unconstitutional. In each of the cases, the municipal court granted the motion and the People filed a petition for mandate in respondent superior court. The four writ proceedings were consolidated and the petitions were denied in orders

---

[1] Further statutory references are to the Health and Safety Code unless otherwise specified.

[2] Despite our dissenting colleague's attempt to characterize these motions as "the type of motions authorized by subdivision (h) of section 11488.4" and despite his labeling the municipal court's orders thereon as the "functional equivalents" of the rulings which the statute makes reviewable by petition within 15 days, they were not. Indeed, the district attorney has yet to receive a probable cause hearing pursuant to the statute.

filed July 7 and July 9, 1987. The People filed the instant petition challenging these orders on September 21, 1987, and named as real parties in interest the defendants and their attorneys.

Respondent court found that the constitutional right of defendants to retain counsel of their choice with funds necessary for bona fide legal services is an exception to the forfeiture provisions of the Health and Safety Code. In each case, the court found that there was substantial evidence that the defendant required the funds at issue to retain counsel and that the amount of funds released in the municipal court's order was reasonable for attorney's fees. The People in this petition do not challenge the finding that the funds were necessary or the reasonableness of the amount released but only the jurisdiction of the court to order the funds released.

*Timeliness*

 There is no statutory period which governs the timeliness of the petitions to the superior court or to this court. The 15-day period in which the People may seek review after the granting of a statutory motion for return of the property pursuant to section 11488.4, subdivision (h), applies only to review of motions made on the ground that there is not probable cause to believe the property is forfeitable.[3] The motion for return in municipal court not only did not purport to be made pursuant to this section, it did not raise the grounds on which the statutory motion may be made. The 15-day limit thus cannot be applied. (See *Lockwood* v. *Superior Court* (1984) 160 Cal.App.3d 667, 671 [206 Cal.Rptr. 785]; *Ondarza* v. *Superior Court* (1980) 106 Cal.App.3d 195, 200 [164 Cal.Rptr. 892].)

Real parties, citing *People* v. *Municipal Court (Mercer)* (1979) 99 Cal.App.3d 749, 752 [160 Cal.Rptr. 455], contend that the petition is untimely because it was filed beyond the 60-day period in which an appeal must be filed. The People correctly point out that in *Mercer* review by petition was sought as an alternative to direct appeal, thus giving the courts

---

[3] Section 11488.4, subdivision (h), provides: "If there is an underlying or related criminal action, a defendant may move, exclusively pursuant to Section 1538.5 of the Penal Code, for the return of the property on the grounds that there is not probable cause to believe that the property is forfeitable pursuant to subdivisions (a) to (g), inclusive, of Section 11470 and is not automatically made forfeitable or subject to court order of forfeiture or destruction by another provision of this chapter. The motion may be made at the preliminary examination or subsequent thereto. If made subsequent to the preliminary examination, the Attorney General or district attorney may submit the record of the preliminary hearing to establish that probable cause exists to believe that the underlying or related criminal violations have occurred.

"Within 15 days after a defendant's motion is granted, the people may file a petition for a writ of mandate or prohibition seeking appellate review of the ruling."

a parallel time limit to consult. Even when there has not been an alternative right to appeal, however, courts of appeal have been reluctant to entertain writs filed beyond the 60-day period in which a party may appeal. (See *Popelka, Allard, McCowan & Jones* v. *Superior Court* (1980) 107 Cal.App.3d 496, 499-500 [165 Cal.Rptr. 748]; *Krueger* v. *Superior Court* (1979) 89 Cal.App.3d 934, 937-938 [152 Cal.Rptr. 870].) Where as here there is no statutory time in which a petition must be filed, the approach of the Supreme Court to the timeliness of a petition has been one of laches. ■ "Laches requires an unreasonable delay in filing the petition plus prejudice to real party." (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 163 [181 Cal.Rptr. 784, 642 P.2d 1305]; see also *People* v. *Superior Court (Kizer)* (1984) 155 Cal.App.3d 932, 934 [204 Cal.Rptr. 179].)

■ Here the petition to this court was filed approximately two and one-half months after the challenged orders.[4] Petitioner contends that the delay was not unreasonable considering that the transcript was not immediately available and the issue is one in which a substantial brief was required. We note, however, that there was substantial briefing of the same issue below and no use has been made of the transcript. Real parties also contend that they have been prejudiced by the delay—on the attorneys' part because they continued their work believing there was to be no petition and on the clients' part because they have been forced to choose between speedy trial rights and the right to be represented by counsel of their choice. As to the defendants, they initiated the issue by their motions for release of funds. They must be held to have waived their speedy trial rights until the appropriate appellate challenges have been exhausted. As to their attorneys, reliance on the fact that no petition had been filed would not be justified, at least during the 60 days in which they now argue the People were required to act. As to the approximately 15-day period after this time, the attorneys are not specific as to the additional work and, thus, the prejudice they suffered.

While we do not wish to suggest approval of delay in a process which can and should be pursued more expeditiously than was done here, this is a case of first impression and one which may escape review if not addressed in a petition for mandate. There is no direct appeal from the superior court's

[4] The delay in petitioning the superior court after granting of the motions in municipal court varied with each of the four petitions. The motions for return of funds as necessary for bona fide attorney's fees were granted by the municipal court in People v. Joseph Grande, Action No. 974329, on March 20, 1987; in People v. Johnson Moore, Action No. 965362, on April 7, 1987; in the consolidated case of People v. Margaret Cascio and Julie Piet, Action No. 990908, on May 18, 1987. The People challenged each of these various orders by petitions to the superior court on June 15, 1987. Thus, the delay between the municipal court order and the filing in superior court amount to 87 days in Grande, 69 days in Moore, 34 days in Cascio/Piet, and 28 days in Clements.

order and the People may not appeal from the final judgment of conviction. The issue is one of importance to both the bar and the public. Under these circumstances, we exercise our discretion in favor of resolving the issue on its merits.

### Scope of the Statute

Prior to 1986, forfeiture of property involved in drug trafficking awaited the conviction of the persons charged with the criminal offense and, thus, the question of whether funds seized before trial could be released for payment of attorney fees was not an issue. In 1986, the forfeiture statutes were amended to bring them more closely in line with federal forfeiture statutes.[5] These federal statutes had themselves been revised by the Comprehensive Forfeiture Act of 1984 (CFA) so as to provide for seizure prior to trial (see 21 U.S.C. § 853 (e)-(f)) and the vesting of title in the government "upon the commission of the act giving rise to forfeiture" (see 21 U.S.C. § 853(c). The purpose of these changes, enacted in the CFA, was to close a loophole in the previous criminal forfeiture scheme that had allowed defendants to evade forfeiture by means of third-party transfers prior to conviction. (See *United States* v. *Monsanto* (2d Cir. 1987) 836 F.2d 74, 78, citing Sen. Rep. No. 98-225, 98th Cong., 1st Sess., p. 196, reprinted in 1984 U.S. Code Cong. & Admin. News, No. 4, at p. 3182, 3379.)

Several federal district courts have held that Congress did not intend the provisions to apply to property used to pay legitimate attorney's fees. (See e.g., *United States* v. *Estevez* (E.D. Wis. 1986) 645 F.Supp. 869; *United States* v. *Ianniello* (S.D.N.Y. 1985) 644 F.Supp. 452; *United States* v. *Badalamenti* (S.D.N.Y. 1985) 614 F.Supp. 194; *United States* v. *Rogers* (D.Colo. 1985) 602 F.Supp. 1332). These lower federal courts concluded that forfeiture was intended to reach only fraudulent third-party transfers and not legitimate attorney's fees. However, the Court of Appeals for the Fourth Circuit rejected this interpretation of the federal statutory scheme and has held that Congress did not intend to exempt nonfraudulent attorney's fees. (*In re Forfeiture Hearing as to Caplin & Drysdale* (4th Cir. 1988) 837 F.2d 637.)

---

[5] The comments to the Assembly Third Reading of Assembly Bill No. 4145 explain: "This bill is drafted to bring California controlled substance forfeiture provisions more closely in line with federal asset forfeiture statutes. Proponents state that 'the inefficiencies and inequities of existing state law . . . give California's law enforcement officials a direct financial incentive to transfer major drug cases to federal authorities for prosecution.' ¶ Proponents state that since enactment of the federal Comprehensive Forfeiture Act, which authorizes joint proceedings and sharing of the proceeds, state law enforcement agencies have stopped pursuing prosecution under state law. The proponents claim that 'millions of dollars from forfeited assets which would otherwise have gone to state and local agencies in California are now being shifted to federal coffers.' It is estimated that over $73 million of illegally gained assets were seized in California in fiscal year 1985 under the federal forfeiture scheme."

The court in *Caplin & Drysdale* pointed out that the language of the forfeiture statute makes no mention of attorney's fees either in its definition of property subject to forfeiture or in its provision for third-party claims of exemption. "The clear terms of the statute subject a defendant's assets to forfeiture without regard to whether he intends to use them to pay an attorney. Similarly, the statute exempts only those third parties who have prior claims or are bona fide purchasers, without regard to whether they are attorneys. Where, as here, a statute's language is unambiguous, the court's task of statutory construction is at an end unless enforcement of the literal language would contravene a clearly expressed legislative intention." (*Id.,* at p. 641.)

The same reasoning applies to the California statutes which in the relevant provisions are patterned after the federal statute. ■ The California definition of property subject to forfeiture makes no mention of attorney's fees (§ 11470, subd. (f), nor does the provision for third-party claims of exemption (§ 11470, subd. (g)). We find no specific provision in the California statutory scheme for exemption from forfeiture of property necessary for bona fide attorney's fees.

*Constitutional Claim*

■ We turn next to the only substantive issue raised in this petition, i.e., whether the constitutional right to counsel of choice *requires* that attorney's fees be exempt from forfeiture. The issue is one of first impression for California appellate courts. Federal courts, however, have given considerable attention to this troubling issue. Until recently, the only two courts that had directly addressed the issue of the constitutional right to counsel of choice in the context of the CFA found the government's interest in forfeiture outweighed by the defendant's interest in using his property to retain counsel. (*United States* v. *Harvey* (4th Cir. 1987) 814 F.2d 905, 924; *United States* v. *Nichols* (D.Utah 1987) 654 F.Supp. 1541, 1558, reviewing case law to date.) The Fourth Circuit overruled the *Harvey* decision sitting en banc in *In re Forfeiture Hearing as to Caplin & Drysdale, supra,* 837 F.2d 637 and held that forfeiture of property necessary for retention of counsel is constitutional.[6]

The *Harvey* and *Nichols* courts applied a balancing test in reaching the conclusion that attorney's fees must be exempted from forfeiture. We, too, apply a balancing test but conclude in agreement with the *Caplin & Drysdale* decision that forfeiture of money necessary for attorney's fees does not unconstitutionally deny a defendant his right to counsel of choice.

---

[6]The Second Circuit also found the forfeiture constitutional in *United States* v. *Monsanto* (2d Cir. 1987) 836 F.2d 74 but a hearing en banc has been granted.

■ We look first to the nature of the defendants' right. "The constitutional right to the effective assistance of counsel is 'among the most sacred and sensitive of our civil rights.' [Citation.] That right is 'broader than . . . the bare right to legal representation . . .' and encompasses the right to retain counsel of one's own choosing. [Citations.]" (*People* v. *Holland* (1978) 23 Cal.3d 77, 86 [151 Cal.Rptr. 625, 588 P.2d 765].) We are not dealing with this right in its absolute form as we must assume that a defendant who has been rendered indigent by forfeiture of funds will be provided effective assistance of counsel by the state. The right to retain counsel of one's own choosing is not an absolute right but one that is qualified by the defendant's ability to pay " 'using any *legitimate* means within his resources.' " (*Ibid.*, italics added.)

The most common example of permitted sequestration of funds is that of contraband such as robber's loot. No argument is made that a defendant should be permitted to use such funds to retain private counsel. Another parallel sequestration is found in jeopardy tax assessments which have been upheld against claims that the assessments caused inability to hire counsel. (See *United States* v. *Brodson* (7th Cir. 1957) 241 F.2d 107; Cf. *Franchise Tax Board* v. *Superior Court* (1985) 168 Cal.App.3d 970 [215 Cal.Rptr. 36].) At oral argument, real parties distinguished these two situations on the ground that the forfeiture was necessary to accomplish the governmental purpose. In the case of robber's loot, only sequestration assures that the contraband can be returned to the true owner. In the case of tax assessments, only sequestration preserves the property which is due the government. ■ Real parties argue that, absent such claims, the forfeiture of funds needed for necessary and bona fide attorney's fees does not forward the purpose of the forfeiture statutes we are here considering. We do not agree.

The government's broad interest underlying the forfeiture statutes is the elimination of traffic in illegal drugs—an interest which has been identified by the Supreme Court as such a compelling state interest that it overrides a reporter's asserted First Amendment right to protect confidential sources. (*Branzburg* v. *Hayes* (1972) 408 U.S. 665, 700-701 [33 L.Ed.2d 626, 650-651, 92 S.Ct. 2646].) In the *Nichols* opinion the court did not suggest that the government's interest was not compelling. Rather, it defined that interest in terms of an articulated purpose of the forfeiture statute, i.e., to strip drug dealers of their economic base; then it agreed with the statement in *United States* v. *Thier* (5th Cir. 1986) 801 F.2d 1463, 1474-1475, that: "Expenditures . . . to secure competent counsel to prove . . . innocence or protect . . . procedural rights should not be considered incentives to crime." We do not define the test in those terms but in terms of whether the forfeiture of property needed for attorney's fees bears a substantial

relationship to the compelling state interest (see *Branzburg* v. *Hayes, supra,* 408 U.S. at p. 700 [33 L.Ed.2d at p. 650]). We find that such a relationship exists. In so finding we are persuaded by the explanation of *Caplin & Drysdale* in analyzing this relationship:

"[T]he government claims a strong interest in deterrence that is served by fee forfeiture. It is true that no one engages in crime solely to make money to hire attorneys. Yet the drug kingpin's certain knowledge that he may have at his beck and call lawyers whose fees run into hundreds of thousands of dollars may make him less apprehensive about continuing in his business. Congress has already underscored the compelling public interest in stripping criminals . . . of their undeserved economic power, and part of that undeserved power may be the ability to command high-priced legal talent." (*In re Forfeiture Hearing as to Caplin & Drysdale, supra,* 837 F.2d at p. 649.)

Not only do real parties not see the relationship in these terms, but they contend that the government should not be permitted to sequester the money needed for attorney's fees on a mere showing of probable cause. However, the deterrent purpose of stripping drug dealers of the advantage of securing private attorneys with illicit funds obviously cannot be accomplished if the defendants are allowed funds for private counsel throughout the criminal proceedings. The means, i.e., forfeiture, are necessary to the accomplishment of the purpose.

Pretrial deprivation of liberty or property on a showing of probable cause is not an unknown means of securing a compelling interest. The court in *Caplin & Drysdale* addressed the argument that the presumption of innocence forbids such interference prior to a verdict of guilty beyond a reasonable doubt. "Forfeiture, like other pretrial deprivations, is problematic in that it can interfere with the use of property that is merely *alleged* to be illicit, and thus owned by the government. The fact that no trial has yet been held does not mean, however, that the government is powerless to protect the public interest in any way that interferes with liberty or property. To assign such a value to the presumption of innocence would mean, for example, that there could be no arrests, and certainly no pretrial detention of defendants. Just as the government may restrain liberty to prevent the flight of a suspect, [citation], it may restrain property to prevent the flight of forfeitable assets. The presumption of innocence is of undoubted importance in assigning the burden of proof at trial, but it is not a grant of immunity from pretrial inconvenience.

"Pretrial deprivations of liberty or property must, of course, be imposed in accordance with the requirements of due process. The strictures

of due process do not, however, convey an absolute right to be free of pretrial deprivations, just as the procedural protections of the Fourth Amendment do not convey an absolute right to hold one's property free of lawful searches and seizures. [Citation.] If there is any general objection to be made to forfeiture as a pretrial deprivation, it must be based on the *procedures* involved, not on a general right to be free from all restraint on liberty and property. No such procedural due process challenge is before us today." (*Id.,* at pp. 643-644.)

 Many concerns have been expressed by real parties and by amicus curiae as to the effect of fee forfeiture on the attorney-client relationship, the defense bar and the adversarial system itself. Again, we agree with the majority opinion in *Caplin & Drysdale*. The Legislature "in the first instance is the proper body to deal with these issues, and courts in specific cases are always present to prevent or to punish abuses." (*Id.,* at p. 648.)

Let a peremptory writ of mandate issue requiring respondent court to set aside its orders denying petitioner's petitions in that court and to enter new orders in conformity with the views expressed in this opinion.

Channell, J., concurred.

POCHÉ, J.—I dissent. Health and Safety Code[1] section 11488.4, subdivision (h) (hereinafter subdivision (h)), provides in pertinent part: "If there is an underlying or related criminal action, a defendant may move . . . for the return of the property on the grounds that there is not probable cause to believe that the property is forfeitable pursuant to subdivisions (a) to (g), inclusive, of Section 11470 and is not automatically made forfeitable or subject to court order of forfeiture . . . by another provision of this chapter. The motion may be made at the preliminary examination or subsequent thereto. . . . [¶] Within 15 days after a defendant's motion is granted, the people may file a petition for a writ of mandate or prohibition seeking appellate review of the ruling."

Each of the criminal defendants who are among the real parties in interest to this petition was affected by identical documents denominated "Complaint And Petition For Forfeiture (Health And Safety Code Section[s] 11470[,] 11488.4 & 11488.5 et seq.)" filed by the district attorney. Each of those defendants filed in the municipal court a separate "Motion For Return Of Property" on the ground that "release of the funds is necessary to enable defendants to retain counsel of their respective choosing and that

---

[1] Unless otherwise indicated, all further statutory references are to the Health and Safety Code.

[the] forfeiture provisions pursuant to which the funds are purportedly being held are not constitutionally applicable to funds necessary for bona fide legal services." Each of these motions argued that the district attorney's right to have the funds declared forfeit pursuant to the forfeiture statutes of the Health and Safety Code were subordinate to the defendant's constitutional right to secure counsel of his or her own choosing. The clear import of these motions is that, within the meaning of subdivision (h), defendants were arguing that "there is not probable cause to believe that the property is forfeitable pursuant to . . . Section 11470" and that the funds were "not automatically made forfeitable or subject to court order of forfeiture." The motions were therefore the type of motions authorized by subdivision (h), one of the statutes invoked by the district attorney. When the municipal court accepted defendants' arguments and ordered the funds released, its orders were the functional equivalents of the *rulings* which that same statute made reviewable by way of petitions for extraordinary relief, *if filed within 15 days.*

Because the release orders were made by the municipal court, the district attorney followed the procedure of subdivision (h) by seeking extraordinary relief from the next higher court in the judicial hierarchy—the superior court. (Had the orders been made by the superior court, an alternative clearly contemplated by the statute's plain language authorizing a motion for release to be made subsequent to the preliminary examination, the obvious avenue for "appellate review" would be to this court.) The majority admits that the delay between the municipal court's orders and the filing of the people's petition in the superior court varied from 28 to 87 days. (Majority opn., *ante,* p. 496, fn. 4.) The district attorney's petitions were therefore beyond the jurisdictional competence of the superior court to act and its ability to order effective relief. (Cf. *People* v. *Municipal Court (Mercer)* (1979) 99 Cal.App.3d 749, 752-753 [160 Cal.Rptr. 455].)

If a writ of mandate is to issue from this court, we must be satisfied that the superior court failed to perform a clear, present, and ministerial duty to compel the municipal court to set aside the release orders. (See *Taylor* v. *Board of Trustees* (1984) 36 Cal.3d 500, 507 [204 Cal.Rptr. 711, 683 P.2d 710]; *Sklar* v. *Franchise Tax Board* (1986) 185 Cal.App.3d 616, 622 [230 Cal.Rptr. 42].) Several principles establish that this requirement cannot be met.

First, "[m]andate may not issue to compel action which is not within the court's jurisdiction." (*Daniels* v. *Superior Court* (1955) 132 Cal.App.2d 700, 701 [282 P.2d 1000]; accord *Franklin* v. *Municipal Court* (1972) 26 Cal.App.3d 884, 898 [103 Cal.Rptr. 354].) Second, and in a related vein, mandate "will not lie to compel the performance of any act which would be

void, illegal or contrary to public policy." (*Duff* v. *City of Gardena* (1980) 108 Cal.App.3d 930, 936 [167 Cal.Rptr. 4]; accord *Swan* v. *Civil Service Commission* (1971) 16 Cal.App.3d 710, 713 [94 Cal.Rptr. 236].) As with such statutes as Penal Code sections 995 and 1538.5, subdivision (h) evidences the Legislature's goal of establishing an orderly and unified procedure governing resolution of forfeiture claims. That procedure includes provisions for (1) those claims to be initially ruled upon by a lower court and (2) obtaining prompt appellate review of lower court rulings. (See *People* v. *Belleci* (1979) 24 Cal.3d 879, 884-885 [157 Cal.Rptr. 503, 598 P.2d 473] [construing Pen. Code, § 1538.5]; *People* v. *Harris* (1967) 67 Cal.2d 866, 870-871 [64 Cal.Rptr. 313, 434 P.2d 609] [construing Pen. Code, § 995].) Subdivision (h) gives the prosecution the right to petition for extraordinary relief should a lower court order the release of property the prosecution wishes to have declared forfeit, "but in the interest of the efficient administration of justice conditions that right upon its timely assertion." (*People* v. *Harris, supra,* at p. 871.)

Condoning untimely assertions of the prosecution's right to seek appellate review would nullify the Legislature's goal in enacting the procedure. It is for this reason that comparable limitation periods fixed by the Legislature have been treated as jurisdictional. (See *Gomes* v. *Superior Court* (1969) 272 Cal.App.2d 702, 704 [77 Cal.Rptr. 539] [re: the 30-day period of Pen. Code, § 1538.5]; *Guerin* v. *Superior Court* (1969) 269 Cal.App.2d 80, 82-84 [75 Cal.Rptr. 923] [re: the 15-day period of Pen. Code, § 999a].) Failure to comply with those periods requires refusal of extraordinary relief. (See *Bernstein* v. *Superior Court* (1955) 45 Cal.2d 774, 775 [291 P.2d 29] [Pen. Code, § 999a]; *People* v. *Superior Court* (1972) 29 Cal.App.3d 135, 138-139 [105 Cal.Rptr. 268] [Pen. Code, § 1538.5].)

Third, "it has been judicially established that the applicant for a writ of mandate must also show that the respondent has a *present* duty to perform the act he seeks to compel. [Citation.] Although this rule is most commonly invoked in denying an application to compel the performance of future acts [citations], it is equally applicable to acts which it is too late to perform [citation]. Thus mandate does not lie when the respondent no longer has the legal authority to discharge the alleged duty because the time for doing so, as specified by statute or ordinance, has expired." (*Treber* v. *Superior Court* (1968) 68 Cal.2d 128, 134 [65 Cal.Rptr. 330, 436 P.2d 330] [original italics].)

Application of these principles makes only one conclusion possible. The People's right pursuant to subdivision (h) to seek appellate review of the municipal court's release orders had terminated by the time petitions were actually filed in the superior court. Confronted by those untimely petitions,

the superior court had no jurisdiction to grant them. Its only possible course of action, its sole ministerial duty, was to deny them. This is precisely what it did. On what basis can it now be maintained that the superior court has a present ministerial duty to grant petitions concerning which it never had jurisdiction?

Today's holding by the majority is achieved only at the expense of longstanding and well-settled principles governing the granting of extraordinary relief, and by the absolution of the People's blatant failure to comply with the procedure established by our Legislature. This may well prove to be a Pyrrhic victory with damaging implications that will be regretted. For example, the law of this case is that the statutory 15-day condition on the People's right to seek review of adverse forfeiture rulings has no force at all: the superior court must entertain such petitions filed as much as 72 days beyond that period. Curing the chaos this imposes upon the management of criminal trial calendars is left by the majority to later cases. Meanwhile this court becomes the first on its block to rule definitively on the constitutionality of the new forfeiture provisions of the Health and Safety Code.

Because I would deny the petition on the ground that the black letter requirements for mandate have not been met, there is no occasion for me to address the merits of the petition.

A petition for a rehearing was denied May 17, 1988. Poché, J., was of the opinion that the petition should be granted. The petition of real parties in interest Piet, Cascio, Clements and Calish for review by the Supreme Court was denied July 28, 1988. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.