UNITED STATES of America, Plaintiff,

v.

Scott L. NICHOLS, et al., Defendants.

No. 86 CR–0146J.

United States District Court,
D. Utah, C.D.

March 2, 1987.

Wayne T. Dance, Asst. U.S. Atty., Salt Lake City, Utah, Katherine Volz, Asst. U.S. Atty., Narcotics & Dangerous Drugs, Washington, D.C., for plaintiff.

Fred Metos, Salt Lake City, Utah, for defendant Nichols.

Jerome H. Mooney, Salt Lake City, Utah, for defendant Bouck.

John O'Connell, Salt Lake City, Utah, for defendant Barnett.

Kenneth Brown, Salt Lake City, Utah, for defendant Day.

Colin P. King, Salt Lake City, Utah, for defendant Hoffman.

Stephen J. Eisenberg, Madison, Wis., for Palomino.

Gilbert Athay, Salt Lake City, Utah, for defendant Shayne.

Stephen McCaughey, Salt Lake City, Utah, for defendant C. Taylor.

Walter Bugden, Salt Lake City, Utah, for defendant Stephens.

Thomas Mitchell, Salt Lake City, Utah, for defendant Bobo.

Jerold McPhee, Salt Lake City, Utah, for defendant Reynolds.

Pat Brian, Salt Lake City, Utah, for defendant West.

Douglas E. Wahlquist, Salt Lake City, Utah, for defendant Hunt.

Louis Casuso, Miami, Fla., for defendant Penaloza.

Solomon Chacon, Salt Lake City, Utah, for defendant Lema.

Kristine Smith, Salt Lake City, Utah, for defendant Mackelprang.

Mark Bessendorfer, Midvale, Utah, for defendant Valgardson.

Mary C. Corporan, Salt Lake City, Utah, for defendant C. Fenton.

John T. Caine, Ogden, Utah, for defendant S. Taylor.

Peter Stirba, Salt Lake City, Utah, for defendant Duke.

Joseph Fratto, Jr., Salt Lake City, Utah, for defendant Montoya.

David Bown, Salt Lake City, Utah, for defendant Don Fenton.

Kevin Kurumada, Salt Lake City, Utah, for defendant Fisher.

Robert Archuleta, Salt Lake City, Utah, for defendant Cordano.

Larry Keller, Salt Lake City, Utah, for defendant Feltman.

## MEMORANDUM OPINION AND ORDER

JENKINS, Chief Judge.

In October 1986, a federal grand jury indicted twenty-six defendants with conspiring to distribute controlled substances in violation of section 841(a)(1) of title 21 of the United States Code. In addition to the conspiracy charge (count I), defendants are charged individually with various substantive counts, including possession or distribution of cocaine, among others. Two defendants also are charged with engaging in a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848. A superseding indictment repeats these charges and adds two more defendants.[1] The criminal prosecution on the substantive offenses currently is proceeding against eight defendants. Other defendants either have entered pleas or have been dismissed.

1. All references to "the indictment" in this opinion refer to the superseding indictment.

The indictment includes a forfeiture provision pursuant to 21 U.S.C. § 853 (Supp. III 1985). Paragraph 1 of the forfeiture provision states:

[U]pon conviction of any violation of these laws, such convicted defendant shall forfeit to the United States (1) any property constituting or derived from any proceeds said defendant obtained, directly or indirectly, as the result of such violation, and (2) any of said defendant's property used or intended to be used, in any manner or part, to commit or to facilitate the commission of such violation, pursuant to Title 21, United States Code, Section 853.

In addition to this general, all-encompassing provision, for defendants Nichols and Palomino (who are charged with engaging in a continuing criminal enterprise), paragraph 1 also seeks forfeiture of any of their "interest in, claims against and property or contractual rights affording a source of control over the continuing criminal enterprise." Finally, paragraph 3 states that "such forfeiture *shall include but not be limited to* " certain specific property, including Nichols' interest in a $100,000 certificate of deposit and $21,300 cash seized from Palomino's residence in Florida. (Emphasis added).

Consistent with the forfeiture provisions of the indictment and pursuant to 21 U.S.C. § 853(e), the magistrate entered a restraining order on November 7 prohibiting the defendants, their family members, attorneys, associates and others from "pledging, distributing, encumbering, or otherwise disposing of or removing from the jurisdiction of this Court" any property specified in paragraphs 1, 2 or 3 of the forfeiture provisions of the superseding indictment.

In order to pay attorneys' fees to defend against the criminal charges, several defendants have asked the court either to quash the restraining order or to exempt certain assets from its effect. The court initially heard argument on these motions

on November 26. Further argument was heard at pre-trial on January 14. The motions of seven defendants are now before the court. Scott Nichols specifically requests exemption of his interest in a $100,000 certificate of deposit, # 34-003-886-28, issued by the Broward Bank in Fort Lauderdale, Florida. Cory Day seeks the return of all automobiles, money or things of value seized from him pursuant to a search warrant on October 29, 1986, in an amount necessary to pay attorneys' fees. The specific property seized includes two automobiles, 20 coin envelopes with coins, eighteen foreign currency bills and cash in the sum of $2,803.52. Ronald Bouck similarly seeks return of seized property to pay attorneys' fees although he does not specify which property. Paragraph 3e of the forfeiture provision of the indictment specifically seeks forfeiture of $33,795 found in Bouck's residence on October 29, 1986. David Palomino asks the court to turn over the $21,300 seized from his residence in Florida. Gary Barnett also asks this court to quash or modify the restraining order.[2] Kevin Hoffman, who has appointed counsel, requests either the turnover or sale of some or all of the property seized from him on October 29. Hoffman's property includes a 1983 Porsche 911 automobile, a 1983 Chevrolet van and various firearms. Gary Fisher, who has entered a plea of guilty in this case, has waived his interest in property seized from him except as there may be third-party claims, specifically a claim by his attorney for fees. His attorney therefore seeks exemption of the 1976 Mercedes Benz automobile to be used for attorneys' fees.

All defendants here argue that the majority of the courts that have considered the question of whether the forfeiture provisions include attorneys' fees have held that the statute does not reach legitimate attorneys' fees. Alternatively, some defendants argue that, if the statute allows forfeiture of fees paid to attorneys, it vio-

---

**2.** Barnett and the government have since entered a stipulation regarding certain property. It is therefore unclear whether his motion is still before the court. Absent information to the contrary, the court assumes that it is.

lates the defendant's sixth amendment right to counsel.

This case presents this issue in a variety of contexts. All defendants except Fisher seek relief from the pre-conviction restraining order, which prohibits the transfer of property prior to conviction. Thus, for these defendants, the question is whether, prior to conviction, potentially forfeitable property may be used to pay for defendants' attorneys. Hoffman and Palomino were appointed counsel under the Criminal Justice Act (CJA), 18 U.S.C. § 3006A.[3] Hoffman's motion in particular raises the interesting question of whether his assets can be exempted to pay for appointed counsel. Finally, Fisher, who has entered a guilty plea, seeks to exempt certain property from forfeiture so that he can pay attorneys' fees. In no case is the government asking the attorney to turn over fees already paid. Thus the issue is whether the forfeiture provisions, including the entry of the restraining order, can prohibit a defendant from transferring property to his attorney either before he is found guilty or, in the case of Fisher, after the criminal proceedings against him have terminated favorably for the prosecution.

■ Because of the complexity of this issue and the important constitutional considerations, the court took under advisement all motions seeking exemption from the restraining order. After a review of the material submitted to the court and the pertinent authorities, this court concludes that the forfeiture provisions of 21 U.S.C. § 853 as they are applied to funds or property reasonably necessary for a defendant to pay attorneys' fees incurred in defending the substantive criminal charges, either before or after conviction, violate a defendant's sixth amendment amendment right to counsel of choice and are unconstitutional. This conclusion similarly applies to the civil forfeiture provisions of the Controlled Substances Act, 21 U.S.C. § 881, as they may be applied to restrict a defendant's ability to pay counsel of his choice in a related criminal trial. Under either section 853 or section 881 of Title 21, when a defendant has no other available assets, the government is not permitted to prohibit the transfer of property to a defendant's chosen attorney for the payment of reasonable fees either prior to trial or after the conclusion of the trial, even if the defendant is found guilty of the charges and the assets used or to be used to pay counsel are "tainted" by the defendants' illegal activities.

THE STATUTE

In 1984, Congress passed the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat. 1837 (1984), amending the Comprehensive Drug Abuse Prevention and Control Act of 1970, (popularly known as the "Controlled Substances Act" or "Drug Control Act") and the Organized Crime Control Act of 1970 or the Racketeer Influenced and Corrupt Organizations (RICO). Of concern here is that portion of the amendment that makes the forfeiture provisions applicable to all felonies under the Drug Control Act ("the Act"). 21 U.S.C. § 853 (Supp. III 1985).[4]

Section 853 provides that persons convicted of crimes under the Act forfeit "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of such violation" or

---

**3.** The magistrate originally appointed counsel for David Palomino. However, through other sources, he now has retained counsel. Counsel claims that the retainer he has been paid is insufficient and the $21,300 seized from his client will be required to pay his fees. Hoffman was appointed counsel and continues to be represented by appointed counsel. His attorney, however, seeks exemption to provide additional funds for Hoffman's defense.

**4.** Under prior law, criminal forfeiture was available under the RICO statute, 18 U.S.C. § 1963 (1982) and the Continuing Criminal Enterprise (CCE) statute, 21 U.S.C. § 848(d) (1982). The amendment repeals § 848(d) and amends § 848(a) to subject persons convicted of CCE to forfeiture as prescribed in the new § 853. The amendment also modifies the existing RICO forfeiture provisions, 18 U.S.C. § 1963. Under current law, the RICO forfeiture provisions and the provisions in the Controlled Substances Act of concern here, (21 U.S.C. § 853), are essentially the same.

any property used to commit or facilitate the commission of a violation under the Act. 21 U.S.C. § 853(a). Most significantly, the amendment codifies the "taint" theory by providing that forfeiture relates back to the time of the acts that give rise to the forfeiture, thus voiding improper preconviction transfers. Specifically, section 853(c) states:

> All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

"Bona fide purchasers" or transferees of a defendant's property are protected through certain post-conviction procedures. *Id.* § 853(n).

The 1984 amendment also modifies the provisions permitting a restraining order under the earlier CCE and RICO statutes. Section 853(e)(1) states:

> Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or taken any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section—
>
> (A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture

may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section;

Section 853(e)(1)(B) provides for a restraining order or other measures to preserve property before an indictment is filed. In this case, a post-indictment restraining order was entered pursuant to section 853(e)(1)(A), a procedure that was allowed before the 1984 amendment.[5] The defendants contest the issuance of a restraining order that affects any transfer to an attorney to pay legitimate attorneys' fees. The issue, therefore, is whether property, which the defendant seeks to use for attorneys' fees to defend himself in this action, may be exempted from the pre-conviction restraining order.

CASE LAW

Several courts have considered whether the criminal forfeiture provisions of either the RICO statute, 18 U.S.C. § 1963, the former provisions of the continuing criminal enterprise statute, 21 U.S.C. § 848, or the amendments to the Drug Control Act, 21 U.S.C. § 853, apply to a defendant's legal fees.[6] Prior to the 1984 amendment codifying the relation back doctrine, courts generally held attorneys' fees forfeitable. *United States v. Raimondo,* 721 F.2d 476 (4th Cir.1983); *United States v. Long,* 654 F.2d 911 (3d Cir.1981); *United States v. Bello,* 470 F.Supp. 723 (S.D.Cal.1979). Several post amendment decisions, however, distinguish these decisions and exempt assets to pay attorneys' fees from the forfeitable property. *United States v. Thier,* 801 F.2d 1463 (5th Cir.1986), *modified,* 809 F.2d 249 (5th Cir.1987); *United States v. Estevez,* 645 F.Supp. 869 (E.D.Wis.1986); *United States v. Figueroa,* 645 F.Supp. 453 (W.D.Pa.1986); *United States v. Bassett,* 632 F.Supp. 1308 (D.Md.1986); *United States v. Reckmeyer,* 631 F.Supp. 1191

---

5. The procedural provisions of the statute, as modified by the amendment, are not at issue here and therefore are not considered by the court.

6. Because the language in the forfeiture provisions of 21 U.S.C. §§ 848 & 853 and 18 U.S.C. § 1963 are essentially identical, courts freely consider the interpretation of one as applying to another. *E.g. United States v. Figueroa,* 645 F.Supp. 453, 455 (W.D.Pa.1986).

(E.D.Va.), 786 F.2d 1216 (4th Cir.), *aff'd on other grounds, cert. denied,* — U.S. ——, 107 S.Ct. 177, 93 L.Ed.2d 113 (1986); *United States v. Ianniello,* 644 F.Supp. 452 (S.D. N.Y.1985); *United States v. Badalamenti,* 614 F.Supp. 194 (S.D.N.Y.1985), *United States v. Rogers,* 602 F.Supp. 1332 (D.Colo. 1985). The courts, however, are not uniform either in decision or in rationale. Some courts find fees already paid to attorneys cannot be ordered forfeited but would not exempt assets prior to payment nor would they modify restraining orders to provide for the payment of attorneys' fees. Others do not allow pre-conviction restraining orders to reach attorneys' fees. Because of the lack of uniformity in these decisions, a more careful review of their holdings and rationale is necessary.

1. *Pre-amendment decisions.* Initial challenges to pretrial restraining orders were couched in terms of procedural due process. Setting the stage for later courts' reasoning on this issue, *United States v. Mandel,* 408 F.Supp. 679 (D.Md.1976), considered a government request for a restraining order during the pendency of a trial pursuant to 18 U.S.C. § 1963, the RICO statute. Applying accepted civil due process requirements for a restraining order, the court held that, under the facts of the case, requiring the government to show that it likely would prevail on the merits essentially required the government to demonstrate the defendant's guilt. Such a finding, according to the court, was "incompatible with the presumption of innocence that the defendants enjoy until such time, if ever, as a jury finds them guilty beyond a reasonable doubt." *Id.* at 683. The court therefore refused to grant a restraining order, finding that such an order would substantially prejudice the defendant.

The *Mandel* rationale, however, was rejected in *United States v. Bello,* 470 F.Supp. 723 (S.D.Cal.1979). In *Bello,* the court stated that a pre-trial restraining order "no more stripped defendant of the presumption of innocence than does the

requirement that he post bond for his release." *Id.* at 724 (quoting *United States v. Scalzitti,* 408 F.Supp. 1014, 1015 (W.D. Pa.1975)). After dismissing defendant's due process claims, the *Bello* court then addressed the defendant's sixth amendment claim, becoming the first court to clearly hold that, because the defendant was entitled to court-appointed counsel, he was not denied his sixth amendment right to an attorney.

The court's decision on the sixth amendment relies on the holding of *United States v. Brodson,* 241 F.2d 107 (7th Cir.), *cert. denied,* 354 U.S. 911, 77 S.Ct. 1297, 1 L.Ed.2d 1428 (1957).[7] *Brodson* held that the court could not determine before trial whether the defendant was denied effective assistance of counsel because of a jeopardy assessment and tax liens that restricted his use of his assets to pay for his defense. According to *Brodson* (and *Bello*), a court could not decide whether a defendant was denied his sixth amendment rights until *after* the defendant's trial.

Although *Bello* is the only case clearly rejecting sixth amendment challenges to criminal forfeiture, specifically the restraining order provisions, the case most quoted for the proposition that attorneys' fees are forfeitable is *United States v. Long,* 654 F.2d 911 (3d Cir.1981). The facts in *Long,* however, have allowed later courts to distinguish it.

*Long* was under investigation for drug offenses. Prior to his indictment, he contacted his attorney to discuss his surrender. His attorney, however, refused to represent him without a retainer and payment of prior unpaid legal services. *Long* therefore transferred title of an airplane, valued at $140,000, to his attorney.

*Long* was then indicted for organizing and managing and illicit drug operation in violation of 21 U.S.C. § 848, the CCE statute. The government, prior to the trial, moved for a restraining order to enjoin the transfer of the airplane. *Long's* law firm contested the government's motion for a restraining order, claiming that, prior to

---

7. This case is discussed in more detail *infra* pp. 1557–58.

the indictment, Long had transferred ownership of the airplane to the law firm.

Because the court found that the airplane "may well represent the profits of a continuing criminal enterprise and is therefore subject to criminal forfeiture," the court granted the issuance of the restraining order. *Id.* at 912. In affirming the pre-trial order, the Third Circuit reasoned that the punitive purposes of the forfeiture provisions should not be frustrated "by allowing a defendant to transfer the illegal proceeds to a knowing third party." *Id.* at 916. The court, therefore, not only upheld the restraining order but also affirmed the relation back theory prior to its codification in the statute.[8]

Later courts distinguish *Long* on its facts, asserting that *Long* provides an example of a "sham" transaction that the forfeiture provisions, especially the relation-back provisions of the amendment, are designed to prevent. *E.g. United States v. Rogers*, 602 F.Supp. 1332, 1350 (D.Colo. 1985). In making this distinction, courts focus on the unusual circumstances of the transfer: During the time the transfer was made, Long was a fugitive, and his attorneys continued to conduct business with him. The payment for the plane was not limited to attorneys' fees; Long was paid $30,000 in cash through an unidentified messenger. Finally, "the circumstances of the sale, through agents and smoke screens in the Bahamas, suggested foul play." *Id.*

Although courts distinguish *Long* as a sham transaction, the court in *Long* does not use the circumstances of the sale as the rationale for enjoining the sale. It simply states that the attorneys had notice that the plane probably was forfeitable. No one, however, raised the sixth amendment right to counsel issue and it was not considered by the court. *Long*'s precedential value, therefore, is limited.[9]

The Ninth Circuit Court of Appeals, in *United States v. Ray*, 731 F.2d 1361 (9th Cir.1984), considered the defendant's sixth amendment challenges to criminal forfeiture, but the facts of the case limit its holding. Ray was convicted of engaging in a continuing criminal enterprise, possession and distribution of cocaine and other related offenses. Prior to his trial, the district court entered an order restraining Ray from disposing of property, except as necessary to pay for "necessities of life for Ray and his wife." *Id.* at 1365. Ray then moved to modify the order to allow him to use some of his funds to pay for his defense. This motion was denied. After trial, Ray appealed that order, claiming that the restraining order denied him his right to counsel.

The court recognized that individuals who can afford to retain counsel have a qualified right to obtain counsel of their choice. In fact, the court went so far as to say that "[d]enial of this qualified right is reversible error regardless of whether prejudice is shown." *Id.* (citing *Releford v. United States*, 288 F.2d 298, 301 (9th Cir. 1961)). The court, however, did not have to decide whether Ray's right to counsel of his choice was denied. Ray was appointed counsel and, in arguing the motion, Ray stated he wanted his appointed counsel to represent him. Therefore, Ray was unable to show that the restraining order restricted his ability to retain counsel of his choice. *Id.* at 1366.

---

8. *United States v. Long* is cited in the legislative history to support the codification of the relation back doctrine. S.Rep. No. 225, 98th Cong. 1st Sess. 191, 200 n. 8, *reprinted in* 1984 U.S. Code & Ad.News 3182, 3374.

9. The Fifth Circuit opinion in *United States v. Raimondo*, 721 F.2d 476 (5th Cir.1981), is similarly limited because it also did not address the constitutional challenges to criminal forfeiture. As in *Long*, the court emphasized that the defendants' attorneys were put on notice by the indictment that the defendants' profits and property were subject to forfeiture. Importantly, however, the court noted that its holding did not prevent the law firm from opposing the government's forfeiture of the property conveyed to them. *Id.* at 478. The court did not analyze whether the transaction was part of a sham and presumably left the door open for the attorneys to protest forfeiture if the transfer of the property was a bona fide purchase.

While the court in *Ray* held against the defendant's sixth amendment claim, that holding resulted from the fortuitous facts in the case. The appeals court simply could, and did, find that the defendant was not denied counsel of his choice because appointed counsel was his choice. *Ray* provides no guidance when appointed counsel is not a defendant's chosen counsel.

In a final pre-amendment decision, *United States v. Lewis*, 759 F.2d 1316 (8th Cir.), *cert. denied, Milburn v. United States*, — U.S. —, 106 S.Ct. 406, 407, 88 L.Ed.2d 357 (1985), the government sought and was granted a restraining order eleven months before trial, preventing the defendant from transferring certain property allegedly purchased with profits from his continuing criminal enterprise and conspiracy to commit tax fraud. The restraining order was later extended until the end of trial, in which the defendant was convicted. On appeal, the defendant argued that the district court failed to follow proper procedures in issuing the restraining order, depriving him of his right to retain counsel of his choice.

The Eighth Circuit Court of Appeals, essentially returning to the holding in *Mandel*, agreed that the district court's procedures were improper and held that the forfeiture provisions of the CCE statute, 21 U.S.C. § 848(d), require the court to follow rule 65 of the Federal Rules of Civil Procedure. The court emphasized that care in following procedures was particularly important because of its effect on a non-indigent's right to retained counsel. *Id.* at 1325. Because of the district court's failure in this regard, the court concluded that the defendant was stripped of most of his assets and "would have been severely hampered in his ability to pay his chosen counsel." *Id.* at 1326.

The court, however, did not have to decide the extent to which the sixth amendment protects a non-indigent's choice of retained counsel, because the defendant did not request the services of any other attorney and appeared to be satisfied with his appointed attorney. The court concluded

that, under the circumstances, the defendant's right to chosen counsel was not violated. The court, however, cited *Ray* with approval, noting that, under other circumstances, the denial of a defendant's qualified right of counsel of his choice might be reversible error regardless of whether prejudice is shown. *Id.* at 1327.

In summary, with the exception of *Bello*, the cases decided before the 1984 amendments do not squarely address the constitutional issue raised here. *Bello* reaches the issue but relies on reasoning that this court, as discussed below, finds inapplicable to the circumstances here. Thus, these early cases simply are not helpful here.

2. *Post amendment decisions.* Courts considering criminal forfeiture after the 1984 amendment generally distinguish early cases and hold that forfeiture does not apply to attorneys' fees. Most courts reach this conclusion by concentrating on the legislative history of the 1984 amendment, particularly as it applies to the newly enacted "relation back" provisions of the statute, section 853(c). Only a few courts address the effect of the pre-trial restraining order, found in section 853(e)(1)(A), and the effect that this provision has on a defendant's right to counsel of choice.

The Colorado district court was the first court to find the application of criminal forfeiture provisions to run counter to a defendant's sixth amendment rights. *United States v. Rogers*, 602 F.Supp. 1332 (D.Colo.1985). In *Rogers*, the government sought a post-indictment restraining order prohibiting the transfer of property allegedly subject to forfeiture under the RICO forfeiture statute. Defendants' counsel entered conditional appearances, objecting to the government's request for a restraining order on procedural grounds and moving to exclude attorneys' fees from forfeiture.

First, the court refused to enter the restraining order, holding that the government essentially must meet the requirements of rule 65 of the Federal Rules of Civil Procedure. *Id.* at 1345.[10] The court

---

**10.** Although the court agreed that the indict-

ment alone may be adequate for the issuance of

**1550**

then considered the defendant's motion to exempt from forfeiture transfers made by the defendant to pay attorneys' fees. Because the court had refused to enter a restraining order or injunction, the motion essentially assumed that the defendants would pay their attorneys and, if convicted, the government would then seek forfeiture under the relation back provision of the statute. Thus the motion more properly was characterized as a motion to exempt from post-conviction forfeiture attorneys' fees already paid from forfeitable assets.

Because the defendants were seeking exemption from claims that third parties might have post-trial, the court first considered the question of standing. The court ruled that the defendants had standing to challenge the validity of post-trial claims of third-parties to assets that may be ordered forfeited because of the potential effect of presently constraining the defendants' own constitutional right of due process and right to counsel. The court then held that the forfeiture provisions did not include legitimate attorneys' fees paid by the defendant for representation in the criminal case.

In reaching this decision, the court relied on legislative history.[11] According to the court, "Congress did not intend to include in those items forfeitable the compensation *already paid* for goods and services legitimately provided." *Id.* at 1348, (emphasis added). Thus the court concluded that "the only assets which are forfeitable, although no longer held by the defendant, are those which the defendant has transferred as some type of sham or artifice." *Id.* at 1347. In essence, the court held that an attorney is a bona fide purchaser, without cause to believe that the property was subject to forfeiture, and therefore a transfer of assets to an attorney was immune from

forfeiture under section 853(c) (quoted *supra,* p. 6).

While the court's holding rests on statutory interpretation, the court did discuss the sixth amendment implications of allowing the forfeiture of fees paid to attorneys. The court found as central to due process the "balance of forces between the accused and his accuser." *Id.* at 1350 (quoting *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973)). Based on this principle, the court reasoned that forfeiture of attorneys' fees, as requested by the government, would undermine the adversary system, giving the government "the ultimate tactical advantage of being able to exclude competent defense counsel as it chooses." *Rogers,* 602 F.Supp. at 1350.

Adopting the *Rogers* rationale, the district courts in Virginia and Maryland both exempted attorneys' fees from forfeiture. *United States v. Reckmeyer,* 631 F.Supp. 1191 (E.D.Va.1986); *United States v. Bassett,* 632 F.Supp. 1306 (D.Md.1986).[12] In *Reckmeyer,* the court considered a motion to modify a forfeiture order entered after a plea of guilty was entered by the defendant. In *Bassett,* the assistant attorney general advised the defendants' chosen counsel that the government intended to seek forfeiture after trial of legal fees paid them by defendants in connection with the matter. In both cases, defendant's counsel entered an appearance conditioned on fees being exempt from forfeiture. As in *Rogers,* the question was "whether the statute's third party forfeiture provisions apply to bona fide legal fees paid by the defendants to their attorneys. *Bassett,* 632 F.Supp. at 1309; *Reckmeyer,* 631 F.Supp. at 1194. Recognizing that the literal terms of the statute would reach attorneys' fees, both courts refused to find that they did, relying on the legislative history enunciat-

a restraining order, it held that the subsequent injunction of longer duration required more than reliance on the indictment and must in fact meet the requirements of rule 65. *Id.* at 1345. The court thus treated the request for restraining order here as a request for an injunction as contemplated in § 853(e)(2).

**11.** The legislative history of the statute is discussed in more detail *infra* pp. 1554–56.

**12.** These two cases have been consolidated for appeal to the Fourth Circuit. Through the government's brief in this case and defendant Nichols' reply, this court has the benefit of the briefs submitted by the parties in that appeal.

ed in earlier decisions. *Bassett,* 632 F.Supp. at 1317; *Reckmeyer,* 631 F.Supp. at 1195. Again, however, the exemption of assets from a pre-trial restraining order was not before the court. These cases are limited to the effect of a final forfeiture order on fees already paid to an attorney. While the holdings in *Rogers, Reckmeyer* and *Bassett* may help defendant Fisher here, they do not directly support the arguments made by other defendants in this case.

The district court for the Southern District of New York also has had the opportunity to consider a defendant's sixth amendment challenges to the forfeiture provisions. The judges in the district, however, do not agree on its resolution.

In the first opinion, *In re Grand Jury Subpoena, (Payden v. United States ),* 605 F.Supp. 839 (S.D.N.Y.), *rev'd* 767 F.2d 26 (2d Cir.1985), by Judge Edelstein, the question was whether the defendant's attorney had to respond to a subpoena seeking evidence relating to the defendant's fee arrangement and payments to counsel. The court held that the attorney must respond and denied the motion to quash, rejecting the defendant's argument that the subpoena interfered with his fifth and sixth amendment rights.[13] On appeal, the Second Circuit warned against unnecessarily deciding broad constitutional issues. *Payden,* 767 F.2d 26, 29 (2d Cir.1985). The appeals court reversed, holding the grand jury subpoena should have been quashed in light of the evidence that its sole or dominating purpose was for preparation for trial on an already pending indictment. *Id.*

Judge Leval, also of the Southern District of New York, disagreed with the district court's conclusion in *Payden* in *United States v. Badalamenti,* 614 F.Supp. 194 (S.D.N.Y.1985), decided on July 10, 1985 and amended July 23, 1985. Chief Judge Motley, also of the Southern District of New York similarly disagreed with *Payden* in *United States v. Ianniello,* 644 F.Supp. 452 (S.D.N.Y.1985).

*Badalamenti* and *Ianniello* echo the conclusion in *Rogers.* In *Badalamenti,* as in *Payden,* the government, relying on the relation back doctrine, subpoenaed an attorney's records reflecting any fees the defendant had paid him. The attorney, joined by his client, moved to quash the subpoena on the grounds that it violated the attorney-client privilege and the defendant's sixth amendment right to counsel.

Acknowledging that a literal reading of the forfeiture statute encompasses attorneys' fees, the court refused to sustain the subpoena, finding that such a reading would have such significant constitutional implications that Congress could not have intended forfeiture to reach fees already paid to an attorney. As in *Rogers,* the court construed the legislative history to conclude that Congress did not intend to reach attorneys' fees.

*Badalamenti,* however, limited its interpretation to fees already paid. The court expressly stated that its holding did not apply "to the seizure of funds *in the hands of the defendant* that he expects to use to pay his attorney." *Id.* (emphasis in original).[14] The court distinguished between the subsequent forfeiture of fees already paid from the pre-trial or pre-conviction seizure of assets and suggested that a different result might be required if the ac-

---

**13.** In footnote, the court elaborated on the issue of whether the sixth amendment forbids the government from obtaining forfeiture of attorneys' fees, an issue that was not before the court. *Id.* at 849 n. 14. Rejecting *Rogers,* the judge reasoned that exempting attorneys' fees from forfeiture would make lawyers conduits for the laundering of proceeds from their clients' illegal activities. In an often quoted passage, the court reasoned that "[f]ees paid to attorneys cannot become a safe harbor from forfeiture of the profits of illegal enterprises. In the same manner that a defendant cannot

obtain a Rolls Royce with the fruits of a crime, he cannot be permitted to obtain the services of the Rolls Royce of attorneys from these same tainted funds." *Id.* To permit such a result, according to the court, would undermine the purposes of the forfeiture acts.

**14.** The court also stated that its holding would not apply to attorneys fees for legal services other than the defense of the criminal trial. *Badalamenti,* 614 F.Supp. at 198.

cused's funds were seized in anticipation of eventual forfeiture, in other words, prior to conviction. In this regard, the court indicated that if there was a pre-conviction forfeiture, a defendant would be appointed counsel and his sixth amendment rights would not be violated.

The consequence of this distinction, of course, is that the government will not wait to seek post-conviction forfeiture. Rather the government will seek a restraining order, freezing a defendant's assets and rendering him indigent, thus denying his counsel of choice. Fees will never be paid to the attorney, and thus the forfeiture issue will not be raised. *Badalamenti* approves this result.

*Ianniello*, the third New York district court case also exempts attorneys' fees from post-conviction forfeiture, relying on the right to counsel argument. As in *Badalamenti*, the court reasoned that an attorney would be reluctant to take a case in which his or her fees were likely to be forfeited. The defendant, however, could not legitimately qualify for appointed counsel.[15] The court rejected the "Rolls Royce" argument in *Payden*, pointing out that forfeiture of a Rolls Royce only affects a defendant's property rights while forfeiture or the possibility of forfeiture of attorneys fees affects, in a very material way, defendant's preparation of his legal defense and the determination of guilt or innocence. *Id.* at 458.

Having decided the post-conviction forfeiture issue, the court addressed the defendants' requested release of certain funds from the pre-trial restraining order. Defendants argued that, without the use of these funds, they would not be able to pay their chosen counsel the agreed-on fees. The court decided that it was unnecessary to reach the sixth amendment issue because the attorneys in this case were in fact counsel of choice and had been retained for many months. While the court modified the restraining order to allow pay-

ment of attorneys' fees, it did not do so on sixth amendment grounds but instead characterized them as a necessity of life. *Id.* at 459.

Although not deciding the issue on sixth amendment grounds, the court acknowledged that if a restraining order did violate the sixth amendment, it would be the right to counsel of choice not the right to counsel, because the defendant would be eligible for appointed counsel. *Id.* at 458, n. 2. The court's position on this issue, however, is unclear. While the court suggested that a restraining order would in fact bar defendants from using their funds to hire chosen counsel "during the time in which they are presumed innocent," the court also acknowledged that at least one court has rejected any distinction between a defendant who is indigent because of circumstances of life and a defendant that the government renders indigent. *Id.* at 459 (citing *Bello*, 470 F.Supp. 723). Thus the court seemed to conclude that when a defendant has chosen counsel, counsel could not be dismissed arbitrarily, but, in some cases, it might be appropriate to subject the defendant's assets to a restraining order and appoint counsel.

*Ianniello* modifies a pre-conviction restraining order so that defendants may pay their attorneys. The decision, however, does not clearly disagree with *Bello* because the modification is not based on the defendant's sixth amendment right to counsel. Two recent cases, however, take this next step.

In *United States v. Estevez*, 645 F.Supp. 869 (E.D.Wis.1986), a request for a pre-trial restraining order was included in the superseding indictment of drug-related offenses. The defendant moved to modify the restraining order to permit him to use his own funds to retain counsel. The court granted the motion. In reaching this conclusion, the court followed *Rogers* and others and relied on legislative history and the

---

**15.** This reasoning presumes that a defendant with assets, even though frozen by a restraining order, would not qualify for appointed counsel. The instant case proves that that assumption is not always correct. Some defendants here have listed their property subject to the restraining order as an asset, noting that it has been seized, and they have been appointed counsel.

intent of Congress. The court, without discussion, extended the rationale that Congress intended only to reach sham transactions to the restraining order provisions in the act. The restraining order in *Estevez*, however, was granted pursuant to section 853(e)(1)(A), a procedure that was permitted prior to the amendment. Other courts' reliance on the legislative history is limited to the relation back provisions of section 853(c).[16] *Estevez*'s adoption of that argument, therefore, may not be justified.

In the only circuit court case considering the application of section 853 to attorneys' fees since the 1984 amendment, *United States v. Thier*, 801 F.2d 1463 (5th Cir. 1986), *modified*, 809 F.2d 249 (5th Cir.1987), the Fifth Circuit recognized the distinction between pre- and post-conviction claims for attorneys' fees and refused to make the leap made in *Estevez*, noting that the legislative history of the relation back provision as interpreted by *Rogers* and others does not require exemption when the case is in a pre-trial posture. *Id.* at 1474.

In *Thier*, as in the present case, the defendant challenged a restraining order that barred any disposition of his assets pending the outcome of his trial for violation of the CCE statute. The district court denied a motion to modify the restraining order, stating that defendant could be represented adequately by appointed counsel and that Congress did not intend to exempt the use of potentially forfeitable assets to pay a defendant's attorneys fees or living expenses.

Remanding, the Fifth Circuit first instructed the district court to comply with rule 65 of the Federal Rules of Civil Procedure in entering an ex parte restraining order. The court then considered the exemption of assets for attorneys fees and necessary living expenses. The majority opinion held that the need for attorneys' fees and living expenses should be balanced against the government's interest in preventing the depletion of potentially forfeitable assets. Under the circumstances of the case, the court instructed the district court on remand to consider the defendant's interests before entering a restraining order or injunction. The court clearly stated that exemption was not mandatory because counsel has an action in his own right to recover fees from forfeited assets post-conviction.[17] *Id.* at 1474. In effect, the court's holding primarily provides procedural protections, requiring the district court to proceed consistent with rule 65 and then to balance the defendant's interest in paying for an attorney of his choice against the government's interest in forfeiture. *Thier* does not dictate a particular result on the exemption issue.

Judge Rubin's concurrence in the case, however, goes farther, stating that "unless the government can show a compelling reason" for forfeiture, exemption should be required. Judge Rubin observed that "the balance of hardship shifts substantially when the government seeks to freeze all of an accused's known assets, including those necessary to provide the accused with counsel and sustenance for himself and his family." *Id.* at 1476 (Rubin, J., concurring). Thus Judge Rubin concluded that the government should submit proof that the accused will be left with adequate means to retain vigorous counsel and to provide ba-

---

**16.** *See infra* p. 1554.

**17.** Referring to § 853(n) procedures, the court states: We see no indication in the statute or legislative history that Congress intended to exclude attorneys from bringing a third-party claim for a reasonable attorney fees against potentially forfeitable assets in a post-conviction hearing. Such a claim could provide an appropriate means of examining claims of this sort. *Thier*, 801 F.2d at 1474.

On rehearing, the court deleted the last sentence of the above quote, substituting the following: This is not to say that a defendant's payment of fees to his counsel will always immunize such fees from post-trial forfeiture, only that a defense lawyer's knowledge of the charges against the client does not ipso facto disqualify the attorney's claim to be a bona fide purchaser under the RICO and CCE forfeiture provisions. *Thier*, 809 F.2d 249 (5th Cir.1987).

sic sustenance for himself and his dependents. Judge Rubin argued that the presumption of innocence outweighed the government's interest in forfeiture and noted that, in effect, the restraining order punished the defendant before conviction and before trial. Judge Rubin advocated setting a standard that would guarantee the accused fundamental fairness in the resolution of his dispute with the government by assuring him minimal funds, reasonable in amount and subject to the court's scrutiny, to employ counsel and to pay essential living expenses until the government has proved its claim.

In summary, while recent case law supports defendant Fisher's position here, the cases provide little assistance on the issue of pre-conviction exemption of a defendant's assets to pay attorneys' fees. The holdings in those cases that do consider pre-conviction restraining orders are limited. *Thier*, which is most clearly on point, does not mandate the result defendants seek here. *Thier* does not require modification of a restraining order to enable the defendant to pay an attorney as a matter of law. *Thier* also does not support the government's position. *Estevez* is perhaps the strongest authority for defendants except that it simply adopts the *Rogers* rationale, applying it to a completely different circumstance. This court is reluctant, therefore, to adopt *Estevez* and the cases it relies on without further consideration of the legislative history that is the underpinning of these recent court decisions.

## LEGISLATIVE HISTORY

The Comprehensive Crime Control Act of 1984, amending the criminal forfeiture provisions of the Drug Control Act and similar provisions in RICO, was "designed to enhance the use of forfeiture, and in particular, the sanction of criminal forfeiture, as a law enforcement tool in combatting two of the most serious crime problems facing the country: racketeering and drug trafficking." S.Rep. No. 225, 98th Cong. 1st Sess. 191 ("S.Rep."), *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3374. The amendments were intended to focus on the economic bases of these crimes and to eliminate those aspects of the prior acts that

frustrated law enforcement agencies' active pursuit of forfeiture. *Id.* at 192, 1984 U.S. Code Cong. & Admin.News at 3375.

The Senate Report clearly addresses pre-conviction transfers, noting the serious problem in the unamended statutes' failure to "address the phenomenon of defendants defeating forfeiture by moving, transferring, or concealing their assets prior to conviction." *Id.* at 195, 1984 U.S.Code Cong. & Admin.News at 3378. It is this language and similar passages that courts, beginning with *United States v. Rogers*, 602 F.Supp. 1332 (D.Colo.1985), focus on in concluding that the statute does not encompass attorneys' fees.

In *Rogers*, the court recognized that the statute granted immunity from forfeiture to bona fide third-party purchasers who at the time of transfer, are reasonably without cause to believe that the property was subject to forfeiture. *Id.* at 1346. The court, finding it problematic that the statute did not address attorneys' fees specifically, turned to the legislative history. It found three passages particularly helpful.

First the court noted that the Senate Report explains that the relation back provisions of the statute as amended are intended to "permit the voiding of certain pre-conviction transfers and so close a potential loophole in current law whereby the criminal forfeiture sanction could be avoided by transfers that were not 'arms length' transactions." *Rogers*, 602 F.Supp. at 1347 (quoting S.Rep. at 200–01, 1984 U.S.Code Cong. & Admin.News at 3383–84). The court then cites a footnote in the report: "The provision should be construed to deny relief [only] to third parties acting as nominees of the defendant or who have knowingly engaged in sham or fraudulent transactions." *Id.* (quoting S.Rep. at 209 n. 47, 1984 U.S.Code Cong. & Admin.News at 3392 n. 47). Finally, *Rogers* quotes an earlier draft of the forfeiture provisions in which the House Judiciary Committee stated explicitly that "[n]othing in this section [dealing with *in personam* forfeiture] is intended to interfere with a person's Sixth Amendment right to counsel." *Id.* (quoting H.Rep. 845, part 1, 98th Cong., 2d Sess., Rep. of the Committee on the Judiciary con-

cerning the Comprehensive Drug Penalty Act of 1984, p. 19 n. 1).[18] Based on these statements in the legislative history, the court concluded that the relation back provision of the statute was not designed to set aside legitimate transfers for value.

To some extent *Rogers* uses the statements in the legislative history out of context and perhaps misplaces the emphasis as well. In particular, the footnote *Rogers* cites appears in that section of the Senate Report that explains the statutory provision for an ancillary hearing to be held *after* a defendant's conviction. At that hearing, third parties asserting a legal interest in property ordered forfeited may obtain judicial resolution of their claims. S.Rep. at 207–209, 1984 U.S.Code Cong. & Admin.News at 3390–92. The footnote specifically modifies a discussion of the equivalent of 21 U.S.C. § 853(n)(6), in which the report states:

> Paragraph (6) provides that a third party will prevail if his claim falls into one of two categories: first, where the petitioner had a legal interest in the property that, at the time of the commission of the acts giving rise to the forfeiture, was vested in him rather than the defendant or was superior to the interest of the defendant; or second, where the petitioner acquired his legal interest after the acts giving rise to the forfeiture but did so in the context of a *bona fide* purchase for value and had no reason to believe that the property was subject to forfeiture.

Thus, even if legitimate attorneys' fees could be construed as a bona fide purchase in which the attorney had no reason to believe that the property was subject to forfeiture, this comment does not support the exemption of attorneys' fees from forfeiture. It only supports the notion that attorneys would have a claim against the forfeited property in an ancillary, post-conviction hearing as provided in section 853(n).

In addition, the court inserts the word "only" into the statement in the footnote. The emphasis of the court suggests that the intent of Congress was that *only* "nominees" were subject to forfeiture. It seems more reasonable to read the statement to mean that nominees of the defendant could not defeat forfeiture. *See* Brickey, *Forfeiture of Attorneys' Fees: The Impact of RICO and CCE Forfeitures on the Right to Counsel,* 72 *Va.L.Rev.* 493, 501 (1986) ("the court inexplicably injected a bracketed word of limitation—'only'—into a sentence that actually expresses no limitation").

The New York district court in *Payden,* disagreed with *Rogers'* interpretation of the legislative history, particularly *Rogers'* quote of an earlier House Report to the effect that "[n]othing in this section is intended to interfere with a person's sixth amendment rights to counsel." *In re Grand Jury Subpoena (Payden v. United States),* 605 F.Supp. 839, 849–50 n. 14 (S.D. N.Y.1985) (quoting *Rogers,* 602 F.Supp. at 1347). *Payden* criticizes *Rogers* for taking the statement out of context, noting that the next sentence of the report states: "The Committee, therefore does not resolve the conflict in the District Court opinions on the use of restraining orders that impinge on a person's right to retain counsel in a criminal case." *Id. Payden* thus concludes that Congress intended to leave the resolution of the sixth amendment conflict to the courts.

■ Both courts have made too much of the statement in the House Report. *Rogers,* and later courts adopting *Rogers'* legislative history rationale, stretch what they consider clear language in the legislative history to interpret what they consider ambiguous statutory language. If anything, the reverse is true: the statute is clear on its face; the legislative history is ambiguous. The statute simply is not the kind of statute that requires the court to resort to its legislative history, particularly when

**18.** *Rogers* notes that this discussion was actually directed to the problem of pre-trial restraining orders. The court, however, considered it relevant to the problem of chilling the pre-trial availability of counsel arising out of threats of post-conviction forfeiture. *Rogers,* 602 F.Supp. at 1347–48 n. 4.

that history is less clear than the statute itself. *See United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (in "determining the scope of a statute" a court must "look first to its language").[19]

In relying on the comments in the legislative history, the courts ignore the essence of the committee hearings and debates. The Senate Judiciary Committee hearings and testimony suggest that the committee was split on whether a restraining order should prohibit a defendant from paying for an attorney from potentially forfeitable assets. In other words, the committee clearly considered the effect of the bill on a defendant's ability to pay counsel of choice. The legislative history also does not suggest that Congress left the resolution of this problem to the courts, as *Payden* maintains. Rather, the debates make it clear that the issue was discussed and debated fully and that initially the committee simply disagreed on how it should be resolved.[20] The Act as Congress passed it, however, is the resolution of that debate. Had the committee intended to exempt attorneys' fees from either a pre-conviction restraining order or from post-conviction forfeiture, the Act would so state. The fact that there is no mention in the Act that attorneys' fees are exempt from the restraining order can only mean that those who favored no exemption for attorneys' fees prevailed.[21] The literal language of the statute cannot be read to create a special category of transfers and thus to exempt attorneys' fees, whether legitimately paid or not. The only issue Congress left to the courts was whether or not the provision, as written to encompass attorneys'

fees, is constitutional. The question is not what Congress intended to say, but rather is the statute, as applied to attorneys' fees, constitutional.

## THE SIXTH AMENDMENT RIGHT TO COUNSEL OF CHOICE

■ The Sixth Amendment to the Constitution states, "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend VI. The right to counsel of one's choice is implicit in the sixth amendment guarantee. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). in *Powell,* the Supreme Court held that an indigent in a capital case who cannot otherwise effectively defend himself, is entitled to appointed counsel. The Court stated, "It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel Court, however, has not clearly defined the extent to which the amendment guarantees an accused the right to counsel of one's choosing.

■ Lower federal courts have consistently recognized a qualified sixth amendment right to be represented by counsel of one's choice. *E.g. United States v. La Monte,* 684 F.2d 672, 673–74 (10th Cir.1982) (recognizing a qualified right to counsel); *United States v. Burton,* 584 F.2d 485, 489 (D.C. Cir.1978) (qualified right to counsel to be "balanced against the public's interest in the orderly administration of justice"), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979); *United States v. Ray,* 731 F.2d 1361, 1365 (9th Cir. 1984) (denial of

**19.** Several courts considering the forfeiture statute concede that a literal reading would include as forfeitable property money or property to pay attorneys' fees. *E.g. Reckmeyer,* 631 F.Supp. at 1195; *Payden,* 605 F.Supp. at 849 n. 14; *Badalamenti,* 614 F.Supp. at 197.

**20.** The legislative history also indicates that the committee considered the problem of restraining orders on the defendant's interests. It states:

> In the Committee's view, the availability of restraining orders is essential in the area of criminal forfeiture and a pretrial restraining order for the purpose of preserving assets

does not impinge on the trial concept of presumption of innocence.

S.Rep. at 204, 1984 U.S. Code Cong. & Admin. News at 3387.

**21.** The statute states that third parties may seek relief from forfeiture if they were bona fide purchasers. It is difficult to conceive of circumstances in which an attorney who agrees to defend a person charged with a violation of Title 21 to which forfeiture applies could be without cause to believe that the property was subject to forfeiture, and thus a bona fide purchaser.

qualified right to counsel of choice is reversible error regardless of whether prejudice is shown); *Releford v. United States*, 288 F.2d 298, 301–02 (9th Cir.1961) (reversing conviction because the trial court denied defendant's motion for a continuance in order to have chosen counsel present). That right, however, may be limited under certain circumstances. For example, denial of a defendant's request for a change of counsel on the eve of trial will be upheld when the defendant is otherwise adequately represented. *Burton*, 584 F.2d 485 (D.C.Cir. 1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed. 2d 34 (1979).[22] Similarly, a defendant may be denied counsel of choice when representation by chosen counsel results in a serious conflict of interest. *E.g. United States v. James*, 708 F.2d 40 (2d Cir.1983) (disqualifying defense counsel because of the law firm's prior representation of a government witness). No such conflicts of interest or delays are present here.

The government argues, however, that absent some effect of the challenged conduct on the reliability of the trial process, the sixth amendment guarantee is not implicated. In this regard, the government relies on *United States v. Brodson*, 241 F.2d 107 (7th Cir.), *cert denied*, 354 U.S. 911, 77 S.Ct. 1297, 1 L.Ed.2d 1428 (1957).

Brodson is a case in which the defendant was prosecuted for filing fraudulent income tax returns. He claimed he was indigent because of a prior jeopardy assessment and tax lien filed against his property. He moved to dismiss the indictment on the grounds that the initiation of criminal prosecution during the pendency of a jeopardy assessment and accompanying tax liens violated his fifth and sixth amendment rights by denying him effective assistance of counsel. *Id.* at 108. The circuit court upheld the trial court's denial of this

motion, holding that the defendant's allegations could only be evaluated at the conclusion of the trial. *Id.* at 110. In other words, some actual effect on the fairness of the defendant's trial had to be shown, not just a speculative effect. Because both the criminal charges and the lien enforcement proceeding were still pending, Brodson could not show such an effect. Therefore, his constitutional challenges were not ripe for consideration. The court suggested that the constitutional questions could more appropriately be considered on a motion to set aside the verdict on appeal.

■ *Brodson* is easily distinguished from the facts here. First, Brodson did not claim that he was denied counsel of choice. In fact, he was represented by retained counsel of his choice. He instead complained that he was unable to afford an accountant who was necessary for his defense. The court refused to speculate on whether his inability to hire an accountant would affect the fairness of his trial. Second, the jeopardy assessment and tax liens are civil, *in rem* proceedings, not criminal, *in personam* forfeiture proceedings. A tax lien also may be subordinated so that the defendant can borrow against the property subject to the lien. In *Brodson* this in fact occurred. *Id.* at 109. Finally, the purpose of a jeopardy assessment and tax lien is to collect monies owed. The primary purpose of criminal forfeiture is punishment. *Brodson* and cases like it are inapposite.

■ In addition to distinguishing *Brodson* on its facts, this court disagrees with its conclusion. *Brodson's* deferral of the issue until the trial is complete can effectively moot the defendant's sixth amendment claim. Under *Brodson*, a defendant in a criminal case who wants to retain counsel but

---

**22.** In *Burton*, the defendant had two attorneys representing him. The first attorney he hired remained counsel throughout the trial. The second attorney, hired later, withdrew on the date of trial. The defendant then requested a continuance because he wanted assistance counsel of his own race. Upholding the trial court's denial of the motion to continue, the court stated:
Once a fair and reasonable initial opportunity to retain counsel has been provided, and ade-

quate counsel obtained, the court, mindful of the accused's interest in having counsel in whom he has confidence, is free to deny a continuance to obtain additional counsel if, upon evaluation of the totality of the circumstances, it reasonably concludes that the delay would be unreasonable in the context of the particular case.
*Id.* at 490.

cannot afford to because of the restraining order is precluded from making a sixth amendment challenge because he cannot show prejudice until his trial is complete. He therefore is appointed counsel and, after trial, his sixth amendment challenge becomes an effective assistance of counsel claim. The defendant must then show that he was prejudiced by his attorney's performance. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Brodson,* the sixth amendment question of counsel of choice is never considered. Rather if it is heard at all, it is heard as a sixth amendment effective assistance of counsel claim. The two are not the same. The question of the defendant's right to counsel of choice under these circumstances becomes a classic case of an issue "capable of repetition but evading review." *Cf. Roe v. Wade,* 410 U.S. 113, 124–25, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973). Important sixth amendment questions cannot be escaped so easily. This court, therefore, respectfully disagrees with *Brodson* and finds the issue ripe for adjudication. *See United States v. Rogers,* 602 F.Supp. 1332, 1335 (D.Colo.1985) (claim that post-conviction forfeiture has the effect of presently constraining sixth amendment right to counsel is ripe).

■ Having concluded that defendants' claims are justiciable but also recognizing that the right to counsel of choice is not absolute, this court is left with the task of balancing the defendants' sixth amendment right to counsel of choice against the public's interest in the orderly administration of justice and the goals of the statute. *See Burton,* 584 F.2d at 489. In either case, the individual defendant's interest must prevail.

■ With respect to the orderly administration of justice, granting the defendants' motions does not delay the trial at this point. In fact, at no time was a continuance suggested. Counsel for the defendants only want to be paid; they are not obstructing the process of the trial. A criminal defendant cannot be denied representation by counsel of choice absent a showing that some important government interest will be adversely affected. *E.g.*

*United States v. Phillips,* 699 F.2d 798, 801 (6th Cir.1983). No such showing in terms of the administration of justice in this case has been made. As one court has suggested, it may be that subjecting attorneys' fees to forfeiture is more likely to impede, rather than to advance the orderly administration of justice because it would require counsel to withdraw, causing delays and disruption and further burdening the already overburdened public defenders. *Reckmeyer,* 631 F.Supp. at 1196.

■ Similarly, the purposes served by the forfeiture statute do not outweigh the defendants' sixth amendment right to counsel of choice. The purpose of the statute is to enhance enforcement of the Drug Control Act by stripping drug dealers of their economic base, attacking the economic aspects of the crime. S.Rep. at 191, 1984 U.S. Code Cong. & Admin.News at 3374. The statute also is punitive—defendants are denied the fruits of their crime. Exempting attorneys' fees from a preconviction restraining order, however, does not undermine the statute's purpose of stripping drug dealers of their economic bases. "Expenditures to secure competent counsel to prove innocence and protect procedural rights should not be considered incentives to crime." *United States v. Thier,* 801 F.2d at 1474; *see also Reckmeyer,* 631 F.Supp. at 1196; *Bassett,* 632 F.Supp. 1308. Furthermore, the statute's interests simply are insufficient when weighed against a defendant's interest in an attorney-client relationship based on trust and confidence. *E.g. Linton v. Perini,* 656 F.2d 207 (6th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982). This is true whether a defendant seeks exemption from a pre-conviction restraining order or post-conviction forfeiture in that both affect his ability to obtain chosen counsel to defend him against the criminal charge.

■ The government counters that a defendant is not denied counsel because appointed counsel is available. Appointment of counsel under the Criminal Justice Act (CJA), 18 U.S.C. § 3006A, is to provide competent counsel to criminal defendants who are financially unable to obtain their own counsel. It should not be used to prevent de-

fendants able to employ counsel from exercising that privilege. But for the government's actions, defendants whose assets are subject to a restraining order would be able to afford an attorney.[23]

Our system of justice simply cannot tolerate government actions that render defendants indigent and thus unable to employ counsel of choice. They are not yet guilty of the charges against them. And legitimate payment of attorneys' fees does not contribute to their criminal activity; it only guarantees them the defense that they desire and deserve. Since the government is going to pay one way or the other—either by paying for appointed counsel through the Criminal Justice Act or by forgoing forfeiture of certain property—it makes more sense to require the government to pay through the latter route, a route that does not trod on the defendant's right to counsel of choice nor do violence to the highly valued presumption of innocence.

■ In balancing a defendant's presumption of innocence and his right to counsel of his choice against the government's interest in the orderly administration of justice and the statute's purpose, this court holds that exemption is required. Unless the government can prove that the defendant has other means adequate to retain counsel of his choice or that there is some other compelling reason for denial,[24] an exemption to the restraining order or a final order of forfeiture is dictated. This is particularly true when, as here, the forfeiture provisions of an indictment and the restraining order are all-encompassing, reaching almost everything of value that a defendant might own. This exemption, however, is limited to an amount required for reasonable attorneys' fees to defend against the related criminal charges. Thus a defendant seeking an exemption must specify the amount requested, the assets to be released and the interest of the defendant in those assets that will be transferred to the attorney.

## THE JOINT APPLICATION OF CRIMINAL AND CIVIL FORFEITURES

Concluding that the restraining order or post-conviction forfeiture cannot constitutionally deprive these defendants of property necessary to pay reasonable attorneys' fees does not solve the defendants' problems here. In its response to defendants' motions to exempt property from the restraining order and from subsequent forfeiture, the government, for the first time, has indicated that not all property seized during the searches on October 29 will be forfeited through the criminal forfeiture provisions of 21 U.S.C. § 853. The government now asserts that it will only seek criminal forfeiture of the specific items listed in the indictment's forfeiture provisions.[25] The government, in its reply memorandum states that all other items, "although within the preview [sic] of the Forfeiture Provisions of the First Superseding Indictment and the Restraining Order, but not specifically listed in the First Superseding Indictment, are being forfeited administratively in accordance with the provisions of 21 U.S.C. § 881(a) and 881(d) and 19 U.S.C. § 1607–1609."

Civil forfeiture pursuant to section 881 [26] is an *in rem* proceeding, commenced by the

---

**23.** Some cases have concluded that appointed counsel is no answer. *Estevez,* 645 F.Supp. at 871. When 28 individuals are charged with a long-term conspiracy and two are charged with a continuing criminal enterprise, the case is necessarily complex. Not all appointed counsel have the experience to defend such charges. Furthermore, the restraining order or threat of forfeiture gives the government the power to force all drug defendants to have court-appointed lawyers. This gives the government unseemly control over who its adversaries will be. *Id.*

**24.** For example, the court might readily find the government's interest in the orderly administra-

tion of justice compelling if a defendant moved for substitution of counsel on the eve of trial. That is not the case here.

**25.** Paragraph 3 of the forfeiture provisions of the indictment specify those assets. *See supra* p. 2.

**26.** Section 881(a) of Title 21 provides:
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist them:
 (1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.

government seizing the asset. For any asset valued in excess of $10,000, judicial forfeiture is required. However, for items of lesser value, the government can proceed administratively. To contest administrative forfeiture, a person asserting an interest in the subject property must file a claim and cost bond with the seizing agency within twenty days of the date of the first publication of notice.[27] 19 U.S.C. § 1608. When a claim and cost bond have been filed, the administrative proceeding terminates, and the government is required to go to court in a civil proceeding to prove whether the seized property is subject to forfeiture.

Because the government now is seeking section 853 criminal forfeiture of only those items specifically listed in the indictment, it argues that defendants' motion for exemption does not apply to items for which section 881 civil forfeiture is being pursued.[28]

*United States v. Dunn*, 802 F.2d 646 (2d Cir.1986) recently held that sections 881 and 853 are not mutually exclusive. However, it did not hold that the government may proceed against a defendant's property under both section 881 and section 853 at the same time and while the criminal prosecution on the substantive offenses is proceeding. In *Dunn*, the court simply allowed the government to use section 881 to proceed against property after the jury found that the property was not forfeitable under section 853.

The Tenth Circuit has suggested that using section 881 is improper when there is a related criminal prosecution on substantive charges. *United States v. $39,000 in Canadian Currency*, 801 F.2d 1210 (10th Cir.1986). The Tenth Circuit noted that Congress, in enacting the Comprehensive Crime Control Act of 1984 clearly differentiated between civil and criminal forfeiture. Further, according to the court, *in rem* civil proceedings may be inappropriate when the government's action is punitive in nature and intended as a sanction against the person. *Id.* at 1219. In footnote, the court clearly expressed its concern about the use of civil forfeiture provisions when a related criminal prosecution is anticipated:

> [T]he wholesale use of civil forfeiture proceedings causes us grave concern when the Government has clearly focused its law enforcement energies and resources upon a person and attempts to restrain his property in anticipation of formal criminal proceedings.

*Id.* at 1219 n. 7.

This same rationale applies once an indictment has been filed and the criminal prosecution has begun. The forfeiture provisions, as originally set out in the indictment in this case, and as echoed in the subsequent restraining order, contemplate

---

(3) All property which is used, or intended for use, as a container for property described in paragraph (1) or (2).

(4) All conveyances, including aircraft, vehicles ... which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of property described in paragraph (1) ...

(5) All books, records ... which are used ... in violation of this subchapter.

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance ... all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violations of this subchapter ...

(7) All real property, including any right, title and interest in .. any lot or tract of land

... which is used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title....

21 U.S.C. §§ 881(a) (1982 & Supp. III 1985). The procedures for forfeitures under the Tariff Act of 1930, 19 U.S.C. § 1303 et seq., apply to civil forfeitures of drug related assets. 21 U.S.C. § 881(d).

**27.** The cost bond must be in the amount of $2,500 or 10% of the value of the property, whichever is less, but not less than $250.00. 19 U.S.C. § 1608.

**28.** At the date of this order, no complaint seeking civil forfeiture has been filed in this court, suggesting that all items for which civil forfeiture is sought are valued at less than $10,000. It is unclear when notice, if any, was provided under 19 U.S.C. § 1608.

forfeiture of all assets that the government could seize from the defendants. Its language is broad and all-encompassing. Its purpose is clearly punitive. By allowing the government to proceed as they desire here is to give them ultimate control over a defendant's assets. When the asset's value exceeds $10,000, the easier route for the government is to proceed criminally. For anything under $10,000, they simply choose an administrative procedure that may not require a court action. In either case, the defendant is denied the use of his assets to pay for his attorney. For the reasons stated, this result, whether the consequence of a criminal or civil proceeding violates the sixth amendment. Therefore, this court concludes that to the extent section 881 civil forfeiture is used in conjunction with a criminal prosecution, it is unconstitutional if it interferes with a defendant's ability to pay for counsel of choice in the related criminal prosecution.

EXEMPTION TO PAY APPOINTED COUNSEL

One final issue remains. Because this court decides that attorneys' fees are exempt from the temporary restraining order entered in this case as well as from any final forfeiture order, the court must consider the dilemma posed in this case as a result of the magistrate's order appointing counsel for the defendants Hoffman and Palomino.

Hoffman was appointed counsel because the restraining order rendered him unable to afford the attorney of his choice.[29] His situation therefore is comparable to the defendant in *United States v. Ray*, 731 F.2d 1361 (9th Cir.1984). In *Ray*, the court held that a pre-trial restraining order did not violate the defendant's sixth amendment right to counsel of his choice because appointed counsel and counsel of defend-

ant's choice were one in the same. The question of whether appointed counsel could be paid from forfeited assets, however, was not addressed.

*United States v. Figueroa*, 645 F.Supp. 453 (W.D.Pa.1983) provides some guidance on this question. Figueroa, like Hoffman, was appointed counsel. After he was found guilty of violations of the Drug Control Act, the court ordered forfeiture of the $32,001 that was seized when he was arrested. His appointed attorney sought a modification of the forfeiture order to permit payment of attorneys' fees and costs. The court held that it could order payment of counsel fees to a court appointed counsel from the money that had been ordered forfeited. Adopting the rationale of *Reckmeyer* and *Rogers*, the court concluded that exemption of attorneys' fees from forfeiture would not undermine the statutory purposes. Although the court indicated that the defendant's right to counsel of choice was not implicated, the court found that, like with retained counsel, forfeited assets can be a source of funds that are available for payment on behalf of a person furnished representation by court appointed counsel. *Id.* at 456.

The Criminal Justice Act ("CJA") contemplates that the court, at any time, may make inquiry as to the ability of the defendant to help finance his defense. 18 U.S.C. § 3006A(c); *United States v. Pinckney*, 491 F.Supp. 82, 84 (W.D.Miss.1980). When the court finds that a defendant furnished representation has funds available to pay for that representation, the court can authorize payment to an appointed attorney or it can order reimbursement. 18 U.S.C. § 3006A(f);[30] *United States v. Bracewell*, 569 F.2d 1194 (2d Cir.1978). *Figueroa* allowed the use of so-called "tainted" assets to pay CJA counsel post-convic-

---

**29.** Hoffman's application for CJA counsel lists property seized during his arrest. Because the magistrate concluded that seized property could not be considered as funds available to pay an attorney, the magistrate found that he qualified for appointed counsel.

**30.** 18 U.S.C. § 3006A(f) provides:

Whenever the United States magistrate or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, ... or to the court for deposit in the Treasury as a reimbursement to the appropriation.

tion. In effect, the court ordered reimbursement from forfeited property.

 This court holds that a section 853(e) restraining order cannot constitutionally prohibit a defendant from obtaining counsel of his choice. As with the other defendants, Hoffman's CJA counsel will be paid a reasonable sum from the property seized from the defendant. On this same basis, reimbursement will be required to pay for appointed counsel who initially represented Palomino. Palomino's retained counsel may be paid from restrained funds upon appropriate application as indicated in this opinion.

CONCLUSION

Because of the importance of this issue and the reliance of counsel on the cases considering the question since the 1984 amendment, this court has reviewed prior cases in some detail in this opinion. While the court agrees with the result in several of these cases—exemption of attorneys' fees from forfeiture or modifying the restraining order to allow payment for attorneys' fees—the court does not agree that the legislative history of the 1984 Act can be relied on to reach this result. Rather than concluding that Congress did not intend section 853 to reach a defendant's transfer of property or money to pay legitimate attorneys' fees, this court holds that section 853 is unconstitutional when it is applied so· as to deprive a defendant of chosen counsel in the related criminal prosecution. In other words, a pre-conviction restraining order or post-conviction forfeiture order cannot strip a defendant of all significant assets, rendering him unable to retain an attorney in a related criminal prosecution. Exemption for reasonable attorney's fees is required from a pre-conviction restraining order and from a post-conviction forfeiture order unless a defendant has other means adequate to retain counsel of choice. This conclusion applies to both civil and criminal forfeiture provisions under Title 21.

Therefore, in each instance, this court finds that funds are available for payment of attorneys' fees. It is therefore ordered that a reasonable sum from assets seized be paid to each attorney, appointed or retained. In each instance, the reasonable sum will be determined after application, hearing and order.

So ordered.